# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1626

_____

Alexander Y. Usenko, Derivatively on Behalf of the SunEdison Semiconductor
Ltd. Retirement Savings Plan

*Plaintiff - Appellant*

v.

MEMC LLC; The Investment Committee of the SunEdison Semiconductor Ltd.
Retirement Savings Plan, Hemant Kapadia; Penny Cutrell; Steve Edens; Karen
Steiner; Cheng Yang; Ben Llorico

*Defendants - Appellees*

John Does 1-10

*Defendants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 16, 2019
Filed: June 4, 2019

_____

Before BENTON, MELLOY, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Alexander Usenko is a former employee of SunEdison Semiconductor, LLC (Semi). Semi was once a wholly owned subsidiary of SunEdison, Inc. Semi made a defined-contribution retirement savings plan available to its employees, including Usenko, that offered SunEdison stock as a retirement investment option. On April 21, 2016, SunEdison filed for bankruptcy. In August 2017, Usenko brought suit derivatively on behalf of the plan and, in the alternative, as a putative class action on behalf of plan participants. Usenko claims that Semi, the investment committee of Semi's retirement savings plan, and the members of the investment committee breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA). Usenko alleges that between July 20, 2015, and April 21, 2016, the defendants knew or should have known that SunEdison was in poor financial condition and faced poor long-term prospects and therefore should have removed SunEdison stock from the plan's assets. The district court[1] dismissed Usenko's complaint as to all defendants for failure to state a claim—other than Penny Cutrell and Karen Steiner, who were dismissed for lack of timely service—and denied Usenko leave to amend his complaint. Usenko appeals the dismissal for failure to state a claim and the denial of leave to amend.[2] We affirm.

I

We draw the following background from the well-pleaded factual allegations in Usenko's complaint, which we accept as true for purposes of the defendants'

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

[2]Usenko does not appeal the dismissal of Cutrell and Steiner.

motions to dismiss.[3] Park Irmat Drug Corp. v. Express Scripts Holding Co., 911 F.3d 505, 512 (8th Cir. 2018).

The plan was created in May 2014, after Semi spun off from SunEdison. The plan made several investment options available to its participants, including a fund that invested solely in the common stock of Semi's former corporate parent. Usenko, among others, elected to exercise this option and held shares of SunEdison common stock through his individual plan account. The plan was later amended to freeze contributions to the SunEdison stock fund. Pursuant to the amendment, effective February 1, 2015, participants could retain their existing investments but could no longer direct additional investments into the SunEdison stock fund.

By mid-2015, it was widely reported that SunEdison was facing liquidity problems and was in financial distress due to an ambitious series of acquisitions. On July 20, SunEdison issued a press release announcing that it would acquire yet another company, Vivint Solar, Inc., for $2.2 billion. Markets reacted poorly, and SunEdison's stock price fell from $31.56 per share to $26.01 per share in a week. On August 6, SunEdison issued another press release, reporting a $263 million loss in its second quarter. That same day, the financial press warned that SunEdison had a $10.7 billion corporate debt load and negative cash flow from operations. By the end of the day, SunEdison's stock closed at $17.08 per share. At the time, investor demand for energy stocks was generally weak.

On November 10, SunEdison issued a press release reporting its third quarter results. These results spurred more negative commentary from the financial press, who questioned whether SunEdison would even be able to meet its existing financial

---

[3]We also derive certain information from plan documents and an independent auditor's report dated December 31, 2014, which Usenko's complaint refers to directly and whose authenticity is not in question. See Dittmer Properties L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).

obligations. On November 18, SunEdison's stock closed at $3.25 per share. On January 7, 2016, SunEdison announced that it was restructuring $738 million of its debt. That same day, the financial press reported that this decision had triggered a massive sell-off because of its dilutive effect on investors, even though SunEdison's strategy would add an estimated $555 million to its liquidity. That week, shares of SunEdison dropped roughly 30 percent, closing at $3.41.

By January 12, the financial press was reporting that SunEdison might not survive the year, and SunEdison's stock closed at $3.02 per share, hitting a low of $2.36 during the day. Commentary suggested that SunEdison stock was risky due to its generally disappointing historical performance and feeble growth in earnings per share as well as the company's high debt-management risk. SunEdison then twice publicly delayed filing its annual report, stating that it needed additional time for its audit committee to complete an internal investigation and otherwise confirm the accuracy of its financial position.

In April, SunEdison and certain of its subsidiaries filed for bankruptcy. SunEdison's common stock was suspended immediately from trading at the market opening on the New York Stock Exchange on April 21, 2016. All told, between July 20, 2015, and April 21, 2016, the market price of SunEdison stock fell from $31.66 to $0.34. As a result, those who had invested in SunEdison stock through Semi's retirement plan effectively lost the entire value of their investment.

In his single-count complaint, Usenko alleges that the defendants breached their fiduciary duties. He claims that they knew or should have known that continuing to hold SunEdison stock between July 20, 2015, and April 21, 2016, was imprudent because SunEdison's failing business prospects dramatically altered its suitability as a retirement investment.

## II

We review the district court's decision granting a motion to dismiss for failure to state a claim de novo, assuming all factual allegations as true and construing all reasonable inferences in favor of the nonmoving party. Retro Television, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768 (8th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Rather, well-pleaded factual allegations must "plausibly give rise to an entitlement to relief." Id. at 679. That is, they must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

To prevail on a claim of breach of fiduciary duty under ERISA, the plaintiff "must make a prima facie showing that [a] defendant acted as a fiduciary, breached [his] fiduciary duties, and thereby caused a loss to the Plan." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

> ERISA imposes upon fiduciaries twin duties of loyalty and prudence, requiring them to act solely in the interest of plan participants and beneficiaries and to carry out their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

Id. at 595 (cleaned up). The "prudent person standard is an objective standard that focuses on the fiduciary's conduct preceding the challenged decision." Roth v. Sawyer-Cleator Lumber Co., 16 F.3d 915, 917–18 (8th Cir. 1994) (citation omitted). ERISA requires fiduciaries to act with prudence, not prescience, and therefore the relevant inquiry focuses on the information available to the fiduciary at the time of

the relevant investment decision.  Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc., 712 F.3d 705, 716 (2d Cir. 2013).

In Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409 (2014), the Supreme Court considered how the pleading standard articulated in Iqbal and Twombly guides the analysis of allegations that ERISA fiduciaries "knew or should have known in light of publicly available information, such as newspaper articles, that continuing to hold and purchase [the employer's] stock was imprudent."  Id. at 426.  In relevant part, the complaint in Dudenhoeffer alleged that publicly available information warned that the stock at issue was "overvalued and excessively risky" and claimed that, under the circumstances, a prudent fiduciary would have known by July 2007 that continuing to hold the stock was imprudent.  Id. at 413.  Between July 2007 and September 2009, when the complaint was filed, the stock's price dropped by 74%, which "eliminated a large part of the retirement savings that the participants had invested in" the plan.  Id.

The Court opined that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances."  Id. at 426.  This is because "ERISA fiduciaries, who . . . could reasonably see little hope of outperforming the market based solely on their analysis of publicly available information may, as a general matter, . . . prudently rely on the market price."  Id. at 426–27 (cleaned up).  In its analysis, the Court embraced the view that a security's price in an efficient market reflects all publicly available information and represents the market's best estimate of its value in light of its riskiness and the future net income flows that those holding it are likely to receive.  See Coburn v. Evercore Trust Co., 844 F.3d 965, 969 (D.C. Cir. 2016).  Noting that the complaint at issue did not point to any special circumstance that rendered reliance on the market price imprudent, the Court

-6-

remanded for the lower courts to apply its guidance in the first instance. Dudenhoeffer, 573 U.S. at 427–30.

The similarity between Usenko's allegations and those that the Supreme Court deemed insufficient to plausibly state a breach of the duty of prudence in Dudenhoeffer is undeniable. Usenko's complaint presents a series of public announcements by SunEdison that spurred negative commentary by the financial press and concomitant drops in stock price. The complaint faults the defendants for failing to act on this publicly available information and alleges that the declines in SunEdison's stock price and reports of SunEdison's extraordinary debts and liquidity problems should have prompted them to investigate and ultimately determine that divesting from SunEdison stock would be prudent as early as July 20, 2015. It contains no allegations that the circumstances indicated to the defendants that they could not rely on the market's valuation of SunEdison stock. See Singh v. RadioShack Corp., 882 F.3d 137, 147 (5th Cir. 2018) (per curiam) ("Plaintiffs cannot evade *Dudenhoeffer*'s general implausibility rule by disguising claims based on public information as special circumstances."). Indeed, Usenko's allegations suggest that SunEdison's stock price did react to the company's announcements and the financial press's negative commentary as to the company's high debt load and liquidity problems, among other concerns.

In sum, Usenko, like the plaintiffs in Dudenhoeffer, alleges that the defendants breached their fiduciary duties because they failed to "outperform[] the market based solely on their analysis of publicly available information" and to conclude that, because SunEdison stock was excessively risky, the plan should divest from SunEdison. Id. at 427 (cleaned up). As explained by the Supreme Court in Dudenhoeffer, as well as several of our sister circuits examining similar claims, such allegations are insufficient to plausibly allege that ERISA fiduciaries breached the duty of prudence. See id; see also Kopp v. Klein, 894 F.3d 214, 218–21 (7th Cir. 2018) (per curiam) (dismissing a claim that defendants breached fiduciary duty "by

allowing Plan participants to invest in Idearc stock at a time when publicly available information revealed it was not a prudent investment"); <u>Rinehart v. Lehman Bros. Holding Inc.</u>, 817 F.3d 56, 61, 65–68 (2d Cir. 2016) (per curiam) (dismissing a claim that fiduciaries "permit[ted] investment in Lehman stock in the face of circumstances arguably foreshadowing its eventual demise"). Accordingly, Usenko fails to plausibly allege that the defendants breached the duty of prudence and dismissal for failure to state a claim is proper.[4]

Usenko's attempts to evade <u>Dudenhoeffer</u> are unavailing. We reject Usenko's argument that <u>Tibble v. Edison International</u>, 135 S. Ct. 1823 (2015) saves his deficient duty-of-prudence allegations. The Supreme Court's acknowledgment in <u>Tibble</u> that an ERISA fiduciary "has a continuing duty to monitor trust investments and remove imprudent ones," <u>id.</u> at 1828, does not exempt Usenko's complaint from meeting <u>Dudenhoeffer</u>'s pleading requirements, <u>see, e.g.</u>, <u>Singh</u>, 882 F.3d at 147 (5th Cir. 2018) (per curiam) (noting that "<u>Tibble</u> establishes that ERISA fiduciaries have a continuing duty to monitor the prudence of plan investments," but nonetheless concluding that "[b]ecause the complaint does not plausibly identify any special circumstances undermining the market price . . . , it does not state a duty of prudence claim based on public information"). And Usenko cannot distinguish <u>Dudenhoeffer</u> on the basis that it only applies to duty-of-prudence claims in the context of employer securities. The Court in <u>Dudenhoeffer</u> explicitly rejected the contention that fiduciaries of employee stock ownership plans are entitled to a special presumption

---

[4]And Usenko's claim that the defendants also breached their co-fiduciary obligations by knowingly participating in each other's purported breaches cannot "survive without a sufficiently pled theory of an underlying breach." <u>Brown v. Medtronic, Inc.</u>, 628 F.3d 451, 461 (8th Cir. 2010). So dismissal of that claim was proper, too.

of prudence.  See Dudenhoeffer, 573 U.S. at 418.  As such, we see no indication that the Court intended to limit Dudenhoeffer to employer securities.  See id. at 425–30.[5]

## III

Finally, we affirm the denial of Usenko's motion for leave to amend his complaint because he failed to submit a proposed amended complaint with his motion.  See, e.g., In re 2007 Novastar Fin. Inc., Sec. Litig., 579 F.3d 878, 884 (8th Cir. 2009).

Accordingly, the judgment of the district court is affirmed.

_____

[5]In his reply brief, Usenko argues for the first time that his complaint survives the defendants' Rule 12(b)(6) motion because he also pleads that the defendants breached their fiduciary duties by failing to diversify away from SunEdison common stock.  We ordinarily do not consider arguments raised for the first time in a reply brief and decline to do so here.  See, e.g., Viking Supply v. Nat'l Cart Co., 310 F.3d 1092, 1099 (8th Cir. 2002).