# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-3616

_____

Deborah Vigeant, and all other individuals similarly situated, et al.

*Plaintiffs - Appellants*

v.

Michael Meek, et al.

*Defendants - Appellees*

------------------------------

Secretary of Labor

*Amicus on Behalf of Appellants*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 10, 2019
Filed: March 24, 2020

_____

Before SMITH, Chief Judge, LOKEN and GRASZ, Circuit Judges.

_____

LOKEN, Circuit Judge

Prior to being acquired in January 2018, Lifetouch, Inc. was an eighty-year-old professional photography company focused primarily on school pictures. All outstanding Lifetouch shares were owned by employees through their participation in an employee stock ownership plan ("ESOP") sponsored by Lifetouch (the "Plan"), making Lifetouch one of the nation's largest wholly-employee-owned companies. In this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), a putative class of present and former employees ("Plaintiffs") sue former trustees of the Plan, former members of the Board of Directors (the "Board"), and Lifetouch. The Amended Complaint alleged, *inter alia*, (i) that the trustees breached their fiduciary duty of prudence to the Plan and its participants by overvaluing Lifetouch stock when the company's fortunes were declining in 2015 and 2016, and (ii) that the Board and Lifetouch breached their fiduciary duties to monitor trustees they appointed and to remedy trustee imprudence. The district court[1] dismissed the Amended Complaint for failure to state a claim. Plaintiffs appeal the dismissal of the above two claims.

We review a Rule 12(b)(6) dismissal for failure to state a claim *de novo*, accepting all well-pleaded factual allegations as true and construing all reasonable inferences in the nonmoving party's favor. Usenko v. MEMC LLC, 926 F.3d 468, 472 (8th Cir.), cert. denied, 140 S. Ct. 607 (2019). To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Applying these standards, we affirm.

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

# I. The ERISA Landscape

ERISA imposes fiduciary duties on persons such as the Plan trustees "to the extent" they exercise discretionary authority or control over the management or administration of the Plan or its assets. 29 U.S.C. § 1002(21)(A). ERISA fiduciary duties include the "prudent man standard of care" set forth in § 1104(a)(1), the duty that is the primary focus of this appeal. A fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and:

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so . . . .

29 U.S.C. § 1104(a)(1)(B), (C). Congress in ERISA also encouraged employers such as Lifetouch to establish an ESOP "to invest primarily in qualifying employer securities," § 1107(d)(6)(A), as a means of both providing retirement savings and fostering employee ownership of businesses. See Martin v. Feilen, 965 F.2d 660, 664-65 (8th Cir. 1992), cert. denied, 506 U.S. 1054 (1993). To this end, § 1104(a)(2) provides that the duty to diversify in paragraph (a)(1)(C) and the duty of prudence in paragraph (a)(1)(B), to the extent it requires diversification, are "not violated by [the] acquisition or holding of qualified employer securities."

Lifetouch made annual contributions to the Plan for the benefit of employees' individual accounts in the Plan. The Board determined the amount of the contributions and whether they would be paid in Lifetouch stock, cash, or other property. Section 5(c) of the Plan provided that contributions "of Company Stock

and other property will be valued at their then fair market value." By contrast, section 16(a) provided that, if a participant retired and requested a distribution from his or her account, the Plan purchased Lifetouch stock in the account at its fair market value "based upon the appraised fair market value determined as of the Anniversary Date . . . immediately preceding the date of repurchase." The Plan provided that the Board-appointed Plan trustees would annually determine the Anniversary Date fair market value as of June 30, using the valuation opinion of an independent appraiser. The Plan paid a retiring participant for his or her Lifetouch stock with cash provided by Lifetouch contributions or Plan earnings, so Lifetouch stock never left the Plan.

## II. Factual Background

The following facts are drawn from the allegations in Plaintiffs' Amended Complaint, which we accept as true for purposes of reviewing a Rule 12(b)(6) dismissal. Usenko, 926 F.3d at 471. By 2015, Lifetouch's business was declining as technology changed the market for school pictures. Lifetouch closed its portrait studios in J.C. Penney and Target department stores. In November 2015, it closed a production facility acquired just four year earlier, laying off 206 employees. An "unusually large number" of senior executives departed the company in 2015 and 2016, including its CEO, defendant Paul Harmel, in July 2016. The next month, new CEO Michael Meek commented publicly that Lifetouch was struggling to adapt to technological changes and evolving consumer demands.

During this period, the Plan trustees were Lifetouch executives Ted Koenecke and Glenn Elo (collectively, the "Trustee Defendants"). They served until May 2017, when Evercore Trust Company, N.A. ("Evercore"), became Trustee. On the June 30, 2015 Anniversary Date, the Trustee Defendants determined the fair market value of Lifetouch stock to be $93 per share -- a ten percent drop from the previous year. On June 30, 2016, they valued the stock at $88 per share. On June 30, 2017, soon after Evercore became Trustee, the Anniversary Date fair market value tumbled to $56 per

share.  Plaintiffs claim the outward manifestations of Lifetouch's financial struggles occurred during 2015 and 2016; the Trustee Defendants breached the duty of prudence by failing to investigate "the obvious overvaluation of Lifetouch stock" in those years, resulting in excessive fair market values that harmed Plan participants. In January 2018, Shutterfly, Inc. bought Lifetouch for $825 million.  Following the sale, the Plan terminated and paid out the remaining participants in cash.

The district court concluded that Plaintiffs failed to plausibly allege that defendants inflated the fair market value of Lifetouch stock in 2015 and 2016, and, because there is no duty to diversify an ESOP's holdings, failed to plausibly allege that Defendants were imprudent in not removing the Plan's investment in that stock. The court dismissed the claim that the Board and Lifetouch breached a duty to monitor because the Trustee Defendants did not breach their duty of prudence.

### III. Discussion

The primary issue on appeal is whether the district court erred in dismissing Plaintiffs' claim that the Trustee Defendants breached their ERISA duty of prudence by overvaluing the fair market value of Lifetouch stock in 2015 and 2016.  Before reaching the merits of that issue, Plaintiffs and the Secretary of Labor raise a recurring issue regarding the applicable standard for reviewing the sufficiency of certain allegations in Plaintiffs' Amended Complaint.

**A.**  In a seven-page section of the Amended Complaint that alleges fiduciary breaches by the Trustee Defendants, Plaintiffs augmented allegations that the Trustee Defendants failed to take into account Lifetouch's evident signs of financial decline in 2015 and 2016 with a more sinister allegation:

> 61.  Indeed, there seems to have been a concerted effort by Lifetouch senior executives to ensure the inflated value of Lifetouch

-5-

stock in 2015 and 2016. One of the metrics used to calculate the success of Lifetouch during this time was to look at the number of "sits" -- photo sittings -- that the Company had booked. The greater the number of sits, the higher the valuation of Lifetouch stock. Yet Lifetouch's practice during this time was to manipulate this figure to make the value of the Company look greater than it actually was. For example, if Lifetouch booked a family of five for a photoshoot, instead of marking that shoot as one "sit," Lifetouch would count it as six -- one for the family, and then one for each individual member of the family. Yet Lifetouch was only profiting from one sit; but the valuation would be inflated because the Company counted the one shoot as six sits. Similarly, Lifetouch would send large teams of employees to do photoshoots in faraway places even though only one or two appointments had been booked, and the profit from the shoot could not justify the expense of the travel. Such expensive shoots counted as sits, however, and thus further boosted Lifetouch's ostensible value when it came time for the stock price assessment. (During 2015 and 2016, of course, the Trustee was composed of senior Lifetouch executives and not a third party).

Defendants argued in their motion to dismiss that this was an allegation of fraudulent overvaluation that was not pleaded with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. The district court agreed *this part* of the imprudence claim was "grounded in fraud" and failed to meet Rule 9(b)'s standard that the circumstances constituting fraud must be pleaded "with particularity":

> This alleged conduct -- providing inaccurate and misleading information to the independent appraiser -- sounds in fraud. Moreover, Plaintiffs do not allege that the Trustees simply had knowledge of and failed to disclose fraud; they allege that they breached their duty by committing fraud. . . . Consequently, the heightened Rule 9(b) pleading standard applies to Plaintiffs' claim that the Trustees manipulated the stock value. The remaining allegation -- Defendants' failures to investigate and remove imprudent investments -- is not based on fraudulent conduct, and thus, Rule 9(b) does not apply to [this] claim.

Based on this ruling, the district court ignored the "Sits Scheme" allegations in Paragraph 61 in considering, under the less rigorous pleading standard in Rule 8(a), whether the remaining allegations plausibly stated a claim the Trustee Defendants breached their duty of prudence by overvaluing Lifetouch stock in 2015 and 2016. On appeal, Plaintiffs argue that, when an ERISA breach of duty claim is pleaded, Rule 9(b) should only apply to an allegation that the ERISA fiduciary committed fraud, not to a claim that the fiduciary failed to act on the basis of another's fraud.[2] The Secretary of Labor as *amicus* argues the district court erred in concluding that Rule 9(b) governs allegations that an ERISA fiduciary "provid[ed] inaccurate and misleading information to the independent appraiser."

We believe the Secretary misconstrued the district court's opinion in equating the court's application of Rule 9(b) to the "Sits Scheme" allegations with a holding that Rule 9(b) applies to all allegations that a fiduciary provided "inaccurate and misleading information" to an independent appraiser. The district court carefully confined its application of Rule 9(b) to "Plaintiffs' claims of fraudulent data manipulation." At oral argument, counsel for the Secretary agreed that Rule 9(b) applies to a breach of fiduciary duty claim when the alleged breach is the commission of a fraud. We conclude that is what the district court intended when it ruled that the sits allegations were grounded in fraud, consistent with our analysis of claims under the Interstate Land Sales Full Disclosure Act in <u>Streambend</u>, 781 F.3d at 1010-13.

---

[2]Though we have not addressed the issue in this context, the Seventh Circuit rejected Plaintiffs' contention in <u>Pugh v. Tribune Co.</u>, 521 F.3d 686, 700 (7th Cir. 2008), concluding that an allegation that ESOP fiduciaries actually knew about fraud that overstated a public company's circulation figures would be "tantamount to a claim of fraud against the defendants themselves, subjecting the complaint to the stricter pleading standards of Rule 9(b)." We are inclined to agree. Cf. <u>Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC</u>, 781 F.3d 1003, 1013 (8th Cir. 2015); <u>Brown v. Medtronic, Inc.</u>, 628 F.3d 451, 459 (8th Cir. 2010).

We further conclude that we need not decide whether Rule 9(b) applied to the allegations in Paragraph 61 because, in their briefs on appeal, Plaintiffs state they only alleged that the Board and Lifetouch breached the ERISA duty of loyalty by manipulating financial data, whereas "the Trustee Defendants are nowhere alleged to have engaged in such manipulation." That is a reinterpretation of Paragraph 61 and their argument to the district court. But it is binding on Plaintiffs on appeal, and it renders the Rule 9(b) issue irrelevant.

Plaintiffs' complaint on appeal is that the district court improperly stripped the Sits Scheme allegations from its analysis of whether the Trustee Defendants breached their duty of prudence because the allegation was grounded in fraud and had not been pleaded with sufficient particularity. If the Trustee Defendants were *not* alleged to have engaged in manipulation, then the Sits Scheme allegation does not support the plausibility of Plaintiffs' breach of duty claim evaluated under the notice pleading standards of Federal Rule 8(a). Paragraph 61 fails to allege what "senior executives" engaged in the Sits Scheme; whether the sits figures were provided to the independent appraiser and, if so, how that affected his annual valuations; or that the Trustee Defendants even knew of the scheme, much less used it in determining the fair market value of Lifetouch stock in 2015 and 2016 based on the appraiser's valuations. Thus, the district court did not err in ignoring these allegations in determining whether Plaintiffs plausibly alleged that the Trustee Defendants breached the duty of prudence by overvaluing Lifetouch stock in 2015 and 2016, or by failing to investigate whether the Anniversary Date valuations were overvalued.

**B.** Turning to the merits of that claim, the district court succinctly summarized Plaintiffs' remaining factual allegations:

> Plaintiffs allege that Lifetouch experienced serious financial problems in 2015 and 2016. Further, Plaintiffs assert that no negative events occurred internally at Lifetouch in 2017 that would have materially

impacted Lifetouch's value. Yet, Lifetouch's stock value did not drop dramatically until 2017. Therefore, say Plaintiffs, Defendants must have overvalued the 2015 and 2016 stock price[s] and withheld Lifetouch's economic struggles to maintain these artificially inflated values.

On appeal, Plaintiffs assert that their claim concerns whether the Amended Complaint plausibly alleged that, had the Trustee Defendants fulfilled their duty of carefully investigating and monitoring the valuation of Lifetouch stock, they would not have missed that Lifetouch's well-documented decline during 2015 and 2016 meant the stock was overvalued in those years and would have reconsidered "the continued prudence of Lifetouch as a retirement investment" for Plan participants. They rely on Tibble v. Edison Intern., 135 S. Ct. 1823, 1829 (2015) (An ERISA plaintiff "may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones.").

The Trustee Defendants correctly respond that Plaintiffs did not appeal the district court's dismissal of their claim that the Trustee Defendants breached the duty of prudence by failing to "remove" Lifetouch stock from the Plan when it became an excessively risky investment. That was the issue in Tibble, which involved an ERISA plan whose fiduciaries were subject to the duty to diversify, the duty that dictates how a traditional fiduciary evaluates investment options under trust law. "Diversification is at the heart of prudent investment under the prudent investor standards of the Restatement (Third) of Trusts and the [Uniform Prudent Investor Act]. This is because prudence under these standards is determined, not as to each asset in isolation, but as to the trust's entire portfolio." Amy Morris Hess et al., Bogert's The Law of Trusts and Trustees § 612 (digital ed. 2019) (footnote omitted); see 29 C.F.R. § 2550.404a-1(b)(2)(i).

Congress eliminated diversification as a prudential consideration for ESOP fiduciaries. The Supreme Court addressed an ESOP fiduciary's more limited duty of

prudence in <u>Fifth Third Bancorp v. Dudenhoeffer</u>, 573 U.S. 409 (2014). In rejecting a "presumption of prudence" in favor of ESOP fiduciaries who buy and hold employer stock, the Court noted the ESOP fiduciary's exemption from the duty to diversify. <u>Id.</u> at 416-19. An ESOP invests in employer securities because that is what it is designed to do. Therefore, any prudential duty to monitor that investment cannot be defined by traditional trust law standards, whether the employer's stock is publicly or privately held. "[T]he prudence requirement is flexible, such that the adequacy of a fiduciary's independent investigation and ultimate investment selection is evaluated in light of the 'character and aims' of the particular type of plan he serves." <u>In re Unisys Sav. Plan Litig.</u>, 74 F.3d 420, 434 (3d Cir.), <u>cert. denied</u>, 519 U.S. 810 (1996). The Supreme Court made this point more dramatically in <u>Dudenhoeffer</u>: when the employer's stock appears risky, the ESOP fiduciary "finds himself between a rock and a hard place: If he keeps investing and the stock goes down he may be sued for acting imprudently . . . but if he stops investing and the stock goes up he may be sued for disobeying the plan documents." 573 U.S. at 424.[3]

In this case, the Trustee Defendants were monitoring an ESOP Plan in which the employer's charter required that *all* outstanding stock be owned by the ESOP in trust for employee participants. Thus, if the Trustee Defendants had determined that Lifetouch stock was excessively risky in 2015 and 2016, the *only* potential buyer for the stock was Lifetouch, which in effect would be a stock redemption. The Amended Complaint did not allege that Lifetouch would be required to redeem its stock at the

---

[3]The Secretary of Labor argues that <u>Dudenhoeffer</u> does not apply to an ESOP fiduciary if the employer's stock, like Lifetouch, is not publicly traded. The Supreme Court has not addressed this issue, and we have no need to decide it. <u>See Amgen Inc. v. Harris</u>, 136 S. Ct. 758 (2016); <u>Retirement Plans Comm. of IBM v. Jander</u>, No. 18-1165, 589 U.S. __ (January 14, 2020). We note that the analysis may be different if an ESOP trustee charged with engaging in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A) defends by claiming that the employer stock was bought or sold "for adequate consideration," § 1108(e)(1). <u>See Perez v. Bruister</u>, 823 F.3d 250, 262-65 (5th Cir. 2016).

Trustees' demand (corporate law would suggest not, and the Plan is silent), that Lifetouch would have agreed to buy, or that forcing a troubled business to repurchase its shares was financially feasible and would not inflict grievous harm on the company that employed Plan participants whose interests the Trustee Defendants were duty-bound to protect. Therefore, the imprudent retention allegations in the Amended Complaint were properly dismissed for failure to state a claim, even if not waived on appeal. See Rinehart v. Lehman Bros. Holdings Inc., 817 F.3d 56, 68 (2d Cir. 2016).

That leaves the issue Plaintiffs did appeal, whether the Amended Complaint plausibly alleged that the Trustee Defendants breached their duty of prudence by failing to investigate and remedy the overvaluation of Lifetouch stock in the June 30, 2015 and June 30, 2016 Anniversary Date valuations. "To prevail on a claim of breach of fiduciary duty under ERISA, the plaintiff must make a prima facie showing that a defendant acted as a fiduciary, breached his fiduciary duties, and thereby caused a loss to the Plan." Usenko, 926 F.3d at 472 (cleaned up). For this claim, the Amended Complaint alleged:

> Because the shares were overvalued by the Trustee, the contribution that Lifetouch made to the Plan in those years was not able to purchase as many shares of Lifetouch stock, which resulted in fewer shares of stock available to distribute to Plan participant accounts.

This allegation is *directly contrary* to the applicable terms of the Plan. Section 16(a) dealt specifically with mandatory repurchases of Lifetouch stock from the account of a retiring participant. "For purposes of this Section," Section 16(a) provided that "fair market value shall be based upon the appraised fair market value determined as of the [previous June 30] Anniversary Date." On the other hand, Section 5 of the Plan, entitled "Employer Contributions," had a significantly different valuation provision:

-11-

(c) . . . Employer Contributions may be paid in cash, shares of Company Stock or other property as the Company's Board of Directors may from time to time determine. *Shares of Company Stock and other property will be valued at their then fair market value.*

This reference to fair market value obviously does not refer to the previous June 30 Anniversary Date valuation -- the word "then" does not mean the prior June 30, and the Anniversary Date valuations did not value "other property." The Amended Complaint did not allege what "fair market value" the Board or the Trustee Defendants used in valuing Lifetouch contributions in 2015 or 2016, much less allege facts plausibly showing breach of fiduciary duty or loss to the Plan by reason of those valuations. Thus, the district court did not err in dismissing the overvaluation claim for failure to state a plausible claim.

## IV. Conclusion

Because Plaintiffs failed to plead a plausible breach of the duty of prudence by the Trustee Defendants, the district court properly dismissed their duty to monitor claims against the Board and Lifetouch because those claims cannot "survive without a sufficiently pled theory of an underlying breach." Brown, 628 F.3d at 461. Accordingly, the judgment of the district court is affirmed.

_____