# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2543

_____

Ann Dormani; Mitchell W. Knoll; David Rigol, Dorothea Simmons, on behalf of
the Target Corporation 401(k) Plan, themselves, and a class consisting of similarly
situated participants of the Plan

*Plaintiffs - Appellants*

v.

Target Corporation; Scott Kennedy; Michael Fiddelke; Plan Investment
Committee; John Mulligan; Corey Haaland; Jodee Kozlak; Beth Jacob; John Doe
*Defendant*s 1-10; Gregg Steinhafel

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: April 15, 2020
Filed: July 28, 2020

_____

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Participants in Target Corporation's employee stock ownership plan sued
Target and several of its senior executives alleging that as ESOP fiduciaries from

February 27, 2013 to August 6, 2014, they breached the duties of prudence and loyalty, as well as the duty to monitor other fiduciaries, in violation of the Employee Retirement Income Security Act of 1974. The district court[1] dismissed. We affirm.

I.

ERISA governs employer-administered stock ownership plans. To safeguard participants in ESOPs, ERISA requires fiduciaries to exercise prudence in managing plan assets, 29 U.S.C. § 1104(a)(1)(B), and act exclusively in the interest of plan participants and their beneficiaries, *id.* § 1104(a)(1)(A). These provisions import the fiduciary duties of prudence and loyalty from the common law of trusts. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp. Inc.*, 472 U.S. 559, 570 (1985). Yet ESOPs differ meaningfully from traditional trust or investment plans. Because Congress sought to encourage employee stock ownership, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014), ESOPs need not be prudently diversified, 29 U.S.C. § 1104(a)(2), and they may be managed by company executives who might otherwise be considered to have conflicts of interest, *id.* § 1108(c)(3).

This case arises from losses suffered by an ESOP administered by Target following Target's ill-fated expansion into Canada. From March 2013 to January 2015, Target opened and then closed more than 100 Canadian stores, due mostly to poor supply chain and inventory management. *See In re Target Corp. Sec. Litig.*, 955 F.3d 738, 740–41 (8th Cir. 2020) (describing Target's "foray into the Canadian market"). Plan participants invested in Target's 401(k) Plan, which includes an ESOP invested almost exclusively in Target's common stock. Because the failure of the Canadian stores hurt Target's stock price, it also hurt the heavily invested Plan. The Plan participants allege Target, Target's Plan Investment Committee, several Target executives who were, at the time, members of the Plan Investment Committee or Plan Administrators, and Target's CEO (who appointed the members of the Plan

---

[1] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Investment Committee) failed to protect the Plan from that fall in Target stock's price and breached fiduciary duties imposed by ERISA.[2]

The Plan participants filed their first complaint in July 2016 and their case was consolidated with a securities lawsuit focusing on the same underlying events. *See In re Target Corp. ERISA Litig.*, No. 16-cv-2400 (D. Minn. 2017). When that case was dismissed in July 2017, they filed this lawsuit thirty days later, pressing the same claims of breach of the duties of loyalty, prudence, and monitoring, but with additional allegations that they argued cured the deficiencies in their initial complaint. The district court disagreed and dismissed the case again. The Plan participants timely appealed.

II.

"To prevail on a claim of breach of fiduciary duty under ERISA, the plaintiff 'must make a prima facie showing that a defendant acted as a fiduciary, breached his fiduciary duties, and thereby caused a loss to the Plan.'" *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019) (quoting *Braden v. Wal-Mart Stores, Inc.*, 558 F.3d 585, 594 (8th Cir. 2009)) (cleaned up).[3] We review the district court's dismissal of a complaint for failure to state a claim *de novo*. *Id.* We assume all factual allegations in the complaint are true and we make all reasonable inferences in favor of the nonmoving party. *Id.*

---

[2] Not all defendants acted as fiduciaries during the whole class period and some defendants are only alleged to have limited fiduciary duties. For our purposes, all defendants except for Target CEO Gregg Steinhafel are alleged to have been ERISA fiduciaries in the class period (the "fiduciaries"). The Target CEOs during the class period (first Steinhafel and then John Mulligan) are also alleged to have violated a duty to monitor the ERISA fiduciaries.

[3] Defendants also argued the Plan participants' complaint was barred by the statute of limitations. In light of *Intel Corp. Investment Policy Committee v. Sulyma*, 140 S. Ct. 768 (2020), defendants have withdrawn that argument and we do not consider it here.

A.

The Plan participants first argue the fiduciaries violated the duty of prudence. The ERISA duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). Specifically, the Plan participants allege the fiduciaries had inside information about Target's problems in Canada and so they should have known continuing to invest in Target stock was imprudent.

"To state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." *Dudenhoeffer*, 573 U.S. at 428. When assessing these claims, we must keep in mind three considerations: (1) ERISA's duty of prudence cannot require a fiduciary to violate the securities laws; (2) ERISA obligations should not conflict with complex insider trading and corporate disclosure laws or with the objectives of those laws; and (3) the Plan participants must plausibly allege "that a prudent fiduciary in the defendant's position *could not* have concluded that [the alternative action] . . . would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund." *Allen v. Wells Fargo & Co.*, No. 18-2781, slip op. at 6 (8th Cir. July 24, 2020) (quoting *Dudenhoeffer*, 573 U.S. at 429–30) (emphasis and alteration in *Allen*). "Determining whether a plaintiff has met this pleading standard is a fact-based inquiry that 'focuses on the information available to the fiduciary at the time of the relevant investment decision.'" *Id.*, slip op. at 7 (quoting *Usenko*, 926 F.3d at 473).

The Plan participants primarily assert two alternative actions the fiduciaries should have taken to preserve the Plan's value: public disclosure of Target Canada's supply-chain management problems or a freeze in Plan purchases of Target stock. As in *Allen*, Target could not have implemented a purchase freeze without inevitable

-4-

disclosure, so we focus our analysis on the Plan participants' public-disclosure argument. *Id.*, slip op. at 7.[4]

The Plan participants base their argument largely on the theory that no prudent fiduciary could conclude disclosure would harm the Plan because an efficient stock market provided with full information would not overreact to disclosure and "[p]rofit seeking arbitrageurs would have act[ed] quickly to . . . bring the price back to fair value." D. Ct. Dkt. 1, Compl. ¶ 191. But "allegation[s] based on general economic principles . . . [are] too generic to meet the requisite pleading standard." *Allen*, slip op. at 9–10; *see also Martone v. Robb*, 902 F.3d 519, 526–27 (5th Cir. 2018). The Plan participants assume *some* drop in stock price was inevitable and the earlier the fiduciaries disclosed Target's Canadian problems and the earlier the drop took place, the less time the Plan would spend purchasing artificially inflated Target stock. As we and nearly every other circuit court to confront this type of argument have held, this chain of reasoning is uncertain and a reasonably prudent fiduciary lacking the Plan participants' faith in arbitrageurs could still believe disclosure was the more dangerous of the two routes. *See Allen*, slip op. at 10; *Laffen v. Hewlett-Packard Co.*, 721 F. App'x 642, 644 (9th Cir. 2018) (per curiam); *Saumer v. Cliffs Natural Res. Inc.*, 853 F.3d 855, 864 (6th Cir. 2017); *Whitley v. BP, P.L.C.*, 838 F.3d 523, 529 (5th Cir. 2016). *But see Jander v. Ret. Plans Comm. of IBM*, 910 F.3d 620, 630–31 (2d Cir. 2018), *vacated and remanded*, 140 S. Ct. 592, *reinstated*, 962 F.3d 85 (2d Cir. 2020).

---

[4] The Plan participants suggest that even though a purchase freeze may require disclosure for some ESOPs, the Plan is different because it maintains a "cash buffer" and it could have silently redirected new contributions to cash. The Supreme Court discussed this option in *Dudenhoeffer*, noting it leaves a fiduciary "between a rock and a hard place" and likely to be sued for imprudence either way if he guesses wrong about where the stock is headed. 573 U.S. at 424. Therefore, even accepting that the Plan participants' "cash buffer" theory offers a disclosure-free method for freezing purchases of Target stock, a reasonable fiduciary could have concluded that diverting contributions to cash would do more harm than good. *See id.* at 429–30.

The Plan participants raised four other alternative acts to the district court, but they are not properly before us. "To be reviewable, an issue must be presented in the brief with some specificity." *Meyers v. Starke*, 420 F.3d 738, 743 (8th Cir. 2005). That means the Plan participants must offer more than a "cursory and summary statement" of the asserted error. *Sidebottom v. Delo*, 46 F.3d 744, 750 (8th Cir. 1995). These four alternative actions differ significantly from each other—they include shifting Plan assets to cash, sending letters to Plan participants encouraging them to diversify, seeking guidance from the Department of Labor, the Securities and Exchange Commission, or other outside experts, or resigning as fiduciaries—and yet they occupy only one page of the participants' brief. In fact, with the exception of resigning as fiduciaries (which is presented as an example), these alternatives are not even mentioned by name and are merely referred to as the Plan participants' "other alternative actions." "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.). Given the complexities of ERISA litigation, and the "important questions of far-reaching significance" for the future administration of ESOPs that the participants' suggested actions implicate, we decline to review them without more thorough exploration of the issues through briefing. *Id.* (quoting *Alabama Power Co. v. Gorsuch*, 672 F.2d 1, 7 (D.C. Cir. 1982)).

B.

The Plan participants also claim the fiduciaries violated the duty of loyalty in administering the Plan. The ERISA duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of participants and beneficiaries." 29 U.S.C. § 1104(a)(1). This duty includes the "obligation to deal fairly and honestly with all plan members" and prohibits "affirmatively miscommunicat[ing] or mislead[ing] plan participants about material matters regarding their ERISA plan when discussing a plan." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007). Complying with this

duty may require a fiduciary to speak up when he knows (or should know) a beneficiary "is laboring under a material misunderstanding of plan benefits." *Id.*

According to the Plan participants, the duty of loyalty required the fiduciaries to engage independent fiduciaries rather than "put themselves in a conflicted position by having the [Plan] hold as much Target Stock as possible to entrench management and provide other benefits to [Target]" and "plac[e] their own and/or [Target's] interests above the interests of the participants." Compl. ¶¶ 209, 239. But ERISA authorizes fiduciaries to "wear different hats." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). "Mere officer or director status does not create an imputed breach of the duty of loyalty simply because an officer or director has an understandable interest in positive performance of company stock." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 421 n.6 (4th Cir. 2007); *see also* 29 U.S.C. § 1108(c)(3) ("Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest."). Put differently, "[p]ersons who serve as fiduciaries may also act in other capacities, even capacities that conflict with the individual's fiduciary duties." *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1 M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008); *see also Allen*, slip op. at 12 (same). Where, as here, Plan participants point to nothing more than the tension inherent in the fiduciaries' dual roles as ERISA fiduciaries and Target officers, they fail to state a claim for breach of the duty of loyalty.

The Plan participants also argue the fiduciaries breached the duty of loyalty by making misleading statements to Plan participants. The district court correctly concluded the Plan participants failed to allege that the ERISA fiduciaries *knew* they were making untruthful statements in their disclosures and to specify which statements were untrue. *See, e.g.*, Compl. ¶ 240 (fiduciaries misled participants "to the extent that" they knew their Summary Plan Descriptions "contained inaccurate portrayals of Target Stock or Target Canada"); *Kalda*, 481 F.3d at 644 ("[A] fiduciary may not *affirmatively* miscommunicate or mislead plan participants about material matters regarding their ERISA plan.") (quotations omitted and emphasis added).

-7-

Notwithstanding this deficiency in the complaint, we would still reject the Plan participants' claim because they assert essentially the same actions we held were not required by the duty of prudence were implicated by the duty of loyalty. Litigants cannot use the duty of loyalty "to circumvent the demanding *Dudenhoeffer* standard" for duty of prudence claims. *See Allen*, slip op. at 13.

## C.

Finally, the Plan participants claim Target's CEOs breached their duty to monitor the other ERISA fiduciaries. This claim cannot survive without an underlying breach and so it fails as well. *Id.*, slip op. at 14.

The judgment of the district court is affirmed.

_____