# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2781

_____

Francesca Allen, individually and on behalf of all others similarly situated and on behalf of the Wells Fargo & Company 401(k) Plan; John Sterling Ross, and all other individuals similarly situated; Mary Lou Shank

*Plaintiffs - Appellants*

v.

Wells Fargo & Company; Wells Fargo Bank NA; Wells Fargo Director of Human Resources; Wells Fargo Director of Compensation and Benefits; Wells Fargo Employee Benefits Review Committee; Lloyd H. Dean; Susan E. Engel; Donald M. James; Stephen W. Sanger; John Does, 1-30; John G. Stumpf; Hope A. Hardison; Justin C. Thornton; Greatbane Trust Company; John Does; Richard Roes; Hope Hardison; Timothy J. Sloan; David A. Hoyt; Michael J. Heid; Frank Codel; Justin C. Thornton; John Shrewsberry; Kevin Oden; Patricia Callahan; Stanhope Kelly; Dawn Martin Harp; Suzanne Ramos; James Steiner; George Wick; Martin Davis; Thomas Wolfe

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: April 15, 2020
Filed: July 27, 2020
_____

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellants Francesca Allen, John Sterling Ross, and Mary Lou Shank appeal the district court[1] order dismissing their second amended complaint brought pursuant to sections 409 and 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1109 and 1132, against Appellees Wells Fargo & Company (Wells Fargo) and fiduciaries of Wells Fargo's 401(k) plan. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

We recite the facts as alleged in the second amended complaint, viewing them in the light most favorable to Appellants. Davenport v. Farmers Ins. Grp., 378 F.3d 839, 841 (8th Cir. 2004).

A.

Wells Fargo sponsors a 401(k) plan (the Plan) that allows its employees to save for retirement by investing a portion of their compensation in one or more investment funds. The Plan is a "defined contribution" benefit plan and is tax qualified under the Internal Revenue Code as both an employee stock ownership plan (ESOP) and a 401(k)-qualified cash or deferred arrangement. Eligible employees participate in the Plan by contributing a percentage of their compensation to the Plan, and Wells Fargo matches employee contributions up to a specified percentage.

Plan participants may invest their contributions in any of the investment funds offered by the Plan. Among those investment fund options are the Wells Fargo ESOP Fund and the Wells Fargo Non-ESOP Fund (together, the Wells Fargo Stock Funds),

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

both of which invest primarily in Wells Fargo stock. In addition, all employer matching contributions are automatically invested in the Wells Fargo Stock Funds. Accordingly, at any given time, a large portion of the Plan's assets is invested in Wells Fargo stock.

## B.

This appeal arises out of the unauthorized-accounts scandal at Wells Fargo. As early as 2004, Wells Fargo, at its senior management's direction, engaged in a practice of imposing unreasonably high sales quotas on its branch employees and then threatening those employees with termination if they failed to meet those unrealistic quotas. Through this aggressive sales program, Wells Fargo pressured and induced thousands of its employees to engage in widespread unlawful and unethical sales practices, including using confidential, personal financial information of Wells Fargo customers to open over 3.5 million unauthorized customer bank accounts and credit cards.

The Wells Fargo fraud was not disclosed to the public until September 8, 2016, when federal banking regulators announced that Wells Fargo had been fined $185 million. The initial public disclosure of the fraud caused the market value of Wells Fargo's stock to drop drastically—with Wells Fargo losing more than $18 billion in market capitalization between the close of market on September 7, 2016 and September 15, 2016—and Plan participants consequently suffered significant losses.

Following the public disclosure of the fraud, Appellants—former and current employees of Wells Fargo and participants in the Plan—brought an action on behalf of themselves, the Plan, and all persons who were participants of the Plan "at any time between January 1, 2014 through September 15, 2016 . . . and whose Plan accounts suffered losses . . . through investments in Wells Fargo" Stock Funds. In their first amended complaint, Appellants brought claims of breach of the duty of prudence and breach of the duty of loyalty pursuant to sections 409 and 502 of

ERISA, as well as derivative claims of co-fiduciary liability and breach of the duty to monitor fiduciaries. Specifically, they alleged Appellees knew as early as 2005 that Wells Fargo's incentive structure was inducing the company's employees to engage in widespread and ongoing unethical and unlawful sales practices, and that such practices were artificially inflating the market value of Wells Fargo's stock. Appellants also alleged that Appellees knew as early as 2013 that a government regulator was investigating Wells Fargo's possible misconduct and, thus, Appellees knew or should have known that public disclosure of the fraud was inevitable. Appellants alleged that, by failing to take corrective measures to protect the Plan participants, such as publicly disclosing Wells Fargo's unethical sales practices prior to September 2016, freezing investment in the Wells Fargo Stock Funds, or purchasing a hedging product, Appellees breached their duties of prudence and loyalty under ERISA.

The district court granted Appellees' motion to dismiss the first amended complaint. The court found that Appellants' allegations with respect to their claim of breach of the duty of prudence did not satisfy the pleading requirements under Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409 (2014), because Appellants failed to plausibly allege that a prudent fiduciary in Appellees' position could not have concluded that Appellants' proposed alternative actions would do more harm than good to the Wells Fargo Stock Funds. Thus, the court dismissed that claim with prejudice. The court also found that Appellants had not pled a freestanding claim of breach of the duty of loyalty and dismissed that claim without prejudice.

Appellants then filed a second amended complaint, alleging that Appellees breached their duty of loyalty by failing to disclose the unethical sales practices, freeze investment in the Wells Fargo Stock Funds, or avoid conflicts of interest.[2] Appellees moved to dismiss, arguing that the court should apply the Dudenhoeffer

---

[2]Appellants also re-plead their claim of breach of the duty of prudence and their derivative claims.

-4-

pleading standard not only to the claim of breach of the duty of prudence, but also to the claim of breach of the duty of loyalty. They argued that, under that standard, the court should dismiss Appellants' claim of breach of the duty of loyalty for the same reasons it dismissed their claim of breach of the duty of prudence. Further, they argued that, even if the Dudenhoeffer pleading standard does not apply to the claim of breach of the duty of loyalty, the court should nonetheless dismiss that claim.

The district court granted the motion to dismiss the second amended complaint, finding that, although Dudenhoeffer does not apply to a claim of breach of the duty of loyalty, Appellants' allegations are nonetheless insufficient to plausibly plead that Appellees breached their duty of loyalty. Further, the court found that, because Appellants fail to plausibly allege that Appellees breached their fiduciary duties under ERISA, their derivative claims also fail. This appeal follows.

## II.

Appellants challenge the district court's grant of Appellees' motion to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, they argue that the district court erred in finding that Appellants fail to plausibly allege claims of breach of the duty of prudence and of breach of the duty of loyalty under ERISA. We review de novo a district court's grant of a motion to dismiss for failure to state a claim, assuming all factual allegations as true and construing all reasonable inferences in the light most favorable to Appellants, the nonmoving party. Usenko v. MEMC LLC, 926 F.3d 468, 472 (8th Cir. 2019).

## A.

ERISA imposes a duty of prudence on plan fiduciaries, including ESOP fiduciaries, which requires that they manage their plans with "care, skill, prudence, and diligence[.]" 29 U.S.C. § 1104(a)(1)(B); see Dudenhoeffer, 573 U.S. at 411-12. But when ESOP fiduciaries are alleged to have inside information that a stock is

overpriced, they confront a unique conflict between securities laws and their duty of prudence. See Amgen Inc. v. Harris, 136 S. Ct. 758, 759 (2016) (per curiam). Thus, the Supreme Court has established a demanding pleading standard for situations in which inside information forms the basis of an imprudence claim:

> To state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it.

Dudenhoeffer, 573 U.S. at 428. Three considerations "inform the requisite analysis." Id. First, in deciding whether a complaint states a claim, courts must bear in mind that ERISA's duty of prudence cannot require the ESOP fiduciary to perform an action that would violate securities laws. Id. Second, "courts should consider the extent to which an ERISA-based obligation . . . could conflict with the complex insider trading and corporate disclosure requirements imposed by the federal securities laws or with the objectives of those laws." Id. at 429.

> Third, lower courts faced with such claims should also consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position *could not* have concluded that [the alternative action] . . . would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund.

Id. at 429-30 (emphasis added). In Amgen, the Supreme Court reaffirmed that a complaint must "'plausibly allege[]' that a prudent fiduciary in the same position 'could not have concluded' that the alternative action 'would do more harm than good.'" 136 S. Ct. at 760 (quoting Dudenhoeffer, 573 U.S. at 429-30) (finding the Ninth Circuit failed to properly evaluate complaint because it failed to assess whether complaint plausibly alleged that a prudent fiduciary in same position could not have concluded that alternative action would do more harm than good). Determining

whether a plaintiff has met this pleading standard is a fact-based inquiry that "focuses on the information available to the fiduciary at the time of the relevant investment decision." Usenko, 926 F.3d at 473.

On appeal, Appellants limit their argument to two proposed alternative actions: public disclosure of the unethical sales practices, and freezing purchases in the Wells Fargo Stock Funds. Because Appellees could not have implemented a purchase freeze without also disclosing Wells Fargo's unethical sales practices, we focus our analysis on the public-disclosure alternative. See Saumer v. Cliffs Natural Res. Inc., 853 F.3d 855, 864-65 (6th Cir. 2017) (noting that implementing a purchase freeze without explanation might be even worse than just disclosing the negative information because it signals to the market that something may be deeply wrong inside the company without giving the market enough information to gauge the stock's true value).

Most circuit courts to consider an imprudence claim based on inside information post-Dudenhoeffer have rejected the argument that public disclosure of negative information is a plausible alternative, finding that a prudent fiduciary could readily conclude that disclosure would do more harm than good "by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund." Singh v. RadioShack Corp., 882 F.3d 137, 149 (5th Cir. 2018) (per curiam) (quoting Dudenhoeffer, 573 U.S. at 430); see Saumer, 853 F.3d at 864 (finding that the "fiduciaries could have concluded that divulging inside information . . . would have collapsed Cliffs's stock price, hurting participants already invested in the ESOP"); Whitley v. BP, P.L.C., 838 F.3d 523, 529 (5th Cir. 2016) (finding "that a prudent fiduciary could very easily conclude that [disclosure of such information] *would* do more harm than good").

Appellants argue that the present case is distinguishable, however, because they allege Appellees knew or should have known that public disclosure of the fraud was inevitable and that, based on general economic principles, the longer the fraud

is concealed, the greater the harm to the company's reputation and stock price. In Martone v. Robb, the Fifth Circuit considered allegations and arguments similar to those presented by Appellants. 902 F.3d 519 (5th Cir. 2018). Specifically, the Martone plaintiff argued that a prudent fiduciary in the defendants' position could not conclude that earlier disclosure of the fraud would do more harm than good because it is a "widely-known and generally-applicable" economic principle that "the longer the fraud persists, the harsher the correction tends to be, usually because a prolonged fraud necessarily means that long-term damage is also done to a fraudster's reputation for trustworthiness." Id. at 526-27 (internal quotation marks omitted). In rejecting this argument, the Fifth Circuit reasoned that if such a principle were as widely known and generally applicable as the plaintiff suggested, then it would apply in virtually every fraud case. But, the court explained, such a principle cannot apply in virtually every fraud case because, in Whitley, the Fifth Circuit had already found that a prudent fiduciary could easily conclude that taking an action that might expose fraudulent conduct would do more harm than good. Id.; see Whitley, 838 F.3d at 529. Accordingly, the court found that the plaintiff failed to plausibly allege that a prudent fiduciary in the defendants' position could not conclude that earlier disclosure of negative information would do more harm than good to the fund.

Similarly, in Laffen v. Hewlett-Packard Co., the Ninth Circuit rejected the plaintiff's proposed alternative action of early disclosure of fraud, finding that a prudent fiduciary in the same circumstances as the defendant could conclude that earlier disclosure, as opposed to later disclosure following a full investigation, would do more harm than good. 721 F. App'x 642, 644 (9th Cir. 2018) (per curiam) ("Laffen's proposed alternative faults Defendants-Appellees for first investigating the whistleblower's allegations before taking action, but a prudent fiduciary must first investigate problems before acting.").

The sole instance in which a circuit court has found that a plaintiff plausibly alleged that a prudent fiduciary in the defendant's position could not conclude that earlier disclosure of fraud would do more harm than good is Jander v. Retirement

Plans Committee of IBM, 910 F.3d 620 (2d Cir. 2018), vacated and remanded, 140 S. Ct. 592, reinstated, 962 F.3d 85 (2d Cir. 2020). In fact, Jander is the only case in which a circuit court has found the Dudenhoeffer pleading standard to be satisfied. In Jander, the Second Circuit found persuasive the plaintiff's allegation that "the eventual disclosure of a prolonged fraud causes reputational damage that increases the longer the fraud goes on," noting that the plaintiff had "cit[ed] economic analyses that show that reputational harm is a common result of fraud and grows the longer the fraud is concealed[.]" Id. at 629 (internal quotation marks omitted). The court also found particularly important the plaintiff's allegation that the defendant knew that disclosure was inevitable because IBM was likely to sell the business and would be unable to hide its overvaluation from the public at that point. Id. The court determined that when the stock drop is inevitable, "it is far more plausible that a prudent fiduciary would prefer to limit the effects of the stock's artificial inflation on the ESOP's beneficiaries through prompt disclosure." Id. at 630.

Turning to the present case, we find that Appellants have failed to plausibly allege that a prudent fiduciary in Appellees' position could not have concluded that earlier disclosure would do more harm than good. Like the Fifth Circuit in Martone, we find Appellants' allegation based on general economic principles—that the longer a fraud is concealed, the greater the harm to the company's reputation and stock price—is too generic to meet the requisite pleading standard. See Martone, 902 F.3d at 526-27. But even considering these general economic principles "as part of the overall picture," as the Second Circuit did in Jander, we reach the same conclusion. See Jander, 910 F.3d at 630. We find particularly important Appellants' allegation that Appellees knew that government regulators were conducting an investigation into Wells Fargo's sales practices since at least 2013 and up until the disclosure in 2016. We find that a prudent fiduciary—even one who knows disclosure is inevitable and that earlier disclosure may ameliorate some harm to the company's stock price and reputation—could readily conclude that it would do more harm than good to disclose information about Wells Fargo's sales practices prior to the completion of the government's investigation. See Laffen, 721 F. App'x at 644. Relatedly, a

-9-

prudent fiduciary could conclude that "an unusually-timed disclosure[,]" such as one made by a plan fiduciary prior to the conclusion of an investigation, "risks 'spooking the market,' creating the potential for an outsized stock drop." Martone, 902 F.3d at 527. We conclude that, "[a]lthough earlier disclosure *may* have ameliorated some harm to the Fund, that course of action was not so clearly beneficial that a prudent fiduciary could not conclude that it would be more likely to harm the fund than to help it." Graham v. Fearon, 721 F. App'x 429, 437 (6th Cir. 2018).

Accordingly, we find that the district court did not err in finding that Appellants have failed to plausibly plead that a prudent fiduciary could not have concluded that Appellants' proposed alternative actions would do more harm than good. Thus, Appellants have failed to state a claim of breach of the duty of prudence.

B.

ERISA also imposes a duty of loyalty on plan fiduciaries. 29 U.S.C. § 1104(a)(1) ("[F]iduciary shall discharge his duties with respect to a plan solely in the interest of the participants[.]"). Because the Dudenhoeffer standard is limited to imprudence claims, Twombly[3] and Iqbal[4] provide the proper pleading standard for disloyalty claims: Appellants must allege sufficient facts to give rise to a plausible inference that Appellees breached their duty.[5]

---

[3]Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

[4]Ashcroft v. Iqbal, 555 U.S. 1030 (2008).

[5]Appellees argue that the Dudenhoeffer standard should apply to the disloyalty claim because such a claim boils down to failure to disclose inside information. The Supreme Court clearly limited the Dudenhoeffer standard to imprudence claims. However, we agree with the district court that the concerns that the Supreme Court cited in relation to imprudence claims apply with equal force to disloyalty claims. Dudenhoeffer, 573 U.S. at 423 (deeming legitimate the "potential for conflict . . . because ESOP fiduciaries often are company insiders and because suits against insider fiduciaries frequently allege . . . that the fiduciaries were imprudent in failing

Appellants first argue that Appellees breached their duty of loyalty by failing to disclose to Plan participants material information about Wells Fargo's unethical and unlawful sales practices. As support, Appellants cite a number of Eighth Circuit cases for the proposition that the duty of loyalty requires a fiduciary to disclose material information about the company to plan participants where such information could adversely affect a plan participant's interests. However, each of those cases involved information about the plan, not non-public information about the company. See, e.g., Shea v. Esensten, 107 F.3d 625, 628-29 (8th Cir. 1997) (holding fiduciary had a duty to disclose health maintenance organization's financial incentive scheme that discouraged treating doctors from providing essential health care referrals for conditions covered under the plan benefit structure); Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009) (holding fiduciary had duty to disclose "complete and accurate material information about the Plan funds and the process by which they were selected").

Moreover, other circuit courts have held that the duty of loyalty does not require disclosure of non-public information about the company that might impact the plan participants. See, e.g., Lanfear v. Home Depot, Inc., 679 F.3d 1267, 1284 (11th Cir. 2012) (affirming dismissal of claim of breach of duty of loyalty because "ERISA does not explicitly impose a duty to provide participants with nonpublic information affecting the value of the company's stock"). As the Eleventh Circuit explained, there is good reason for the distinction between plan information and non-public information that may affect stock value: if there were an affirmative duty to disclose non-public information that would impact the stock, such a duty "would improperly transform fiduciaries into investment advisors." Id. at 1285 (citing In re Citigroup ERISA Litig., 662 F.3d 128, 143 (2d Cir. 2011), abrogated by Dudenhoeffer, 573 U.S. at 409). Moreover, such an affirmative duty would circumvent the Dudenhoeffer

---

to act on inside information they had about the value of the employer's stock"). Accordingly, we find the district court did not err in rigorously applying Twombly and Iqbal to the disloyalty claim.

standard and render it worthless; there would be no reason to analyze whether a prudent fiduciary could have concluded that disclosure of non-public information would do more harm than good.

Second, Appellants argue that Appellees breached their duty of loyalty due to conflicts of interest. Specifically, Appellants allege that Appellees chose not to disclose the unethical sales practices so as to not jeopardize their own high-ranking positions. But, beyond this conclusory allegation, Appellants fail to allege any specific facts from which a court can infer that Appellees were motivated by disloyal reasons in choosing not to disclose information. Moreover, ERISA permits "[p]ersons who serve as fiduciaries [to] also act in other capacities, even capacities that conflict with the individual's fiduciary duties." Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal, 516 F.3d 719, 732 (8th Cir. 2008). Thus, the fact that some fiduciaries also hold high-ranking positions in the company is insufficient to create a plausible inference that Appellees failed to act loyally due to conflicts of interest. See In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig., 756 F. Supp. 2d 330, 355 (S.D.N.Y. 2010) ("[T]he purported conflict would exist for all corporate insiders, who are charged with managing the affairs of the corporation; it would deprive the plans of services of the most knowledgeable individuals."); cf. Singh, 882 F.3d at 150 (finding that "Plaintiffs fail to point to any fact suggesting a conflict of interest other than Defendants' stock ownership" and thus "the complaint fails to allege facts that would give rise to a plausible inference that Defendants' concern about the stock price was self-serving").

Appellants also argue that they have stated a disloyalty claim based on conflicts of interest because they allege that Appellees sold their own Wells Fargo shares at an inflated price. However, as Appellees note, corporate officers and directors sell their stock periodically. See Pugh v. Tribune Co., 521 F.3d 686, 695 (7th Cir. 2008) (noting that "executives sell stock all the time"). We find that the fact that Appellees sold their Wells Fargo shares at an inflated price, without more, is insufficient to give rise to a plausible inference that Appellees breached their duty of loyalty. See Singh,

882 F.3d at 150 ("We decline to adopt a rule that would make stock ownership, without more, synonymous with a plausible claim of fiduciary disloyalty."); cf. Coulter v. Morgan Stanley & Co. Inc., 753 F.3d 361, 368 (2d Cir. 2014) (per curiam) ("[A] conflict of interest claim cannot be based solely on the fact than an ERISA fiduciary's compensation was linked to the company's stock." (internal quotation marks omitted)).

We are persuaded by Appellees' argument that Appellants' disloyalty claim "merely recasts the imprudence claim" so as to circumvent the demanding Dudenhoeffer standard. As Appellees note, Appellants' disloyalty claim and imprudence claim are based on the same alleged acts: failing to disclose the unethical sales practices, and failing to freeze purchases in the Wells Fargo Funds. "Surely the [Supreme] Court did not lay down the detailed requirements for pleading a breach of the duty of prudence if all that was required was to label the insufficient allegations as a breach of the duty of loyalty." In re Pilgrim's Pride Stock Inv. Plan ERISA Litig., No. 2:08-cv-472-JRG-RSP, 2016 WL 8814356, at *4 (E.D. Tex. Aug. 19, 2016).

Accordingly, we find that the district court did not err in holding that Appellants have failed to sufficiently plead a claim of breach of the duty of loyalty. Because the district court properly dismissed Appellants' claims of breach of fiduciary duties, the district court also properly dismissed Appellants' derivative claims of co-fiduciary liability and breach of the duty to monitor. See Brown v. Medtronic, Inc., 628 F.3d 451, 461 (8th Cir. 2010) (holding that "neither of [the derivative] claims can survive without a sufficiently pled theory of an underlying breach").

III.

For the foregoing reasons, the judgment of the district court is affirmed.

_____