In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-3389

DIANE BURKE, et al., as participants in and on behalf of the
Boeing Voluntary Investment Plan, and on behalf of a class
of all others who are similarly situated,

*Plaintiffs-Appellants*,

*v.*

THE BOEING COMPANY, et al.,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-02203 — **Virginia M. Kendall**, *Judge*.

———————————

ARGUED MAY 21, 2021 — DECIDED AUGUST 1, 2022

———————————

Before SYKES, *Chief Judge*, and RIPPLE and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This appeal presents new variations on issues that often arise when the value of employer stock held by an employee stock ownership plan drops substantially. The Employee Retirement Income Security Act (ERISA) allows company insiders to serve as fiduciaries of

employee benefit plans, so that they owe fiduciary duties both to plan participants and to the company. See Pub. L. No. 93-406, 88 Stat. 829 (1974) (codified in various sections of 29 U.S.C.); see also 29 U.S.C. § 1108(c)(3); *Halperin v. Richards*, 7 F.4th 534, 542 (7th Cir. 2021). Such insiders also have obligations to all shareholders under securities laws.

For decades, employees unhappy about dropping stock values in employee stock ownership plans have tried to use ERISA to obtain relief from the ERISA fiduciaries and their employers. At the foundation of the early efforts was a theory that when an employer's business ran into serious trouble that would cause the stock value to drop, company insiders with fiduciary duties under ERISA were obliged to use inside information about those troubles for the benefit of employee-shareholders at the (implicit) expense of other shareholders. That theory would conflict directly with federal securities laws. The Supreme Court made clear in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), that ERISA does not require fiduciaries to violate securities laws on insider trading.

In trying to reconcile ERISA and federal securities laws, however, *Dudenhoeffer* left open at least a theoretical possibility for employees to seek relief under ERISA on a theory that plan fiduciaries had a duty to disclose bad news to *everyone*. Yet as part of the balance between ERISA and securities law, *Dudenhoeffer* imposed demanding pleading standards for such claims, requiring plaintiffs to plausibly allege an alternative action the defendant could have taken that would have been consistent with securities law and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the employee stock ownership fund than to help it. 573 U.S. at 428. Since *Dudenhoeffer*, plaintiffs in

ERISA stock-drop cases have been trying to satisfy, limit, or avoid those pleading standards.

This court and others have long responded to ERISA fiduciaries' sometimes-conflicting interests by suggesting that the conflicted fiduciaries step aside in favor of new, independent fiduciaries who can focus exclusively on the interests of ERISA plan participants and beneficiaries. E.g., *Leigh v. Engle*, 727 F.2d 113, 125 (7th Cir. 1984); *Donovan v. Bierwirth*, 680 F.2d 263, 271–72 (2d Cir. 1982).

Many years ago, The Boeing Company adopted that approach for its employee stock ownership plan, also known as an "ESOP." Boeing plan fiduciaries delegated to an independent outside fiduciary the selection and management of investment options for the ESOP. The central question here is whether the delegation of those investment responsibilities protects the company and company insiders from liability for the plan's continued offering of Boeing stock as an investment option for employees before and during a time when the value of Boeing stock dropped significantly. The drop occurred after two fatal crashes of new Boeing 737 MAX airliners led to a worldwide grounding of those planes and a halt to production. We agree with the district court that the delegation of investment decisions to an independent fiduciary means that neither Boeing nor the other defendants acted in an ERISA fiduciary capacity in connection with the continued investments in Boeing stock. We affirm the district court's dismissal of the action.

I.  *Factual and Procedural Background*

A.  *The Boeing Company's Employee Stock Ownership Plan*

The Boeing Company designs and manufactures commercial jets and defense, space, and security systems. Plaintiffs are Boeing employees who participated in the Boeing Voluntary Investment Plan (the "Plan"), a 401(k) plan that Boeing sponsors for eligible employees.

The Plan is an employee benefit plan and employee pension benefit plan covered by ERISA. See 29 U.S.C. § 1002(2)(A). Boeing employees may allocate a percentage of their earnings to be invested in the Plan. See §§ 1002(34) & 1107(d)(3). At all relevant times, one investment option has been the Boeing Stock Fund. Plaintiffs are Plan participants whose savings were invested in the Boeing Stock Fund between November 7, 2018, and December 16, 2019 (the "Class Period"). The defendants are Boeing itself, its Employee Benefit Plans Committee (the "Plans Committee"), which is the Plan Administrator under 29 U.S.C. § 1002(16)(A), responsible for administering the Plan, and the Employee Benefit Investment Committee (the "Investment Committee"), which oversees the Plan's investment options, plus named and unnamed Boeing officials who served on one or both committees.

B.  *The Third-Party Delegation*

In December 2007, the Investment Committee began contracting with an outside trust company to manage the Plan's investments in Boeing stock. During the Class Period for this case, the outside fiduciary was Newport Trust Company. The operative agreement between the Investment Committee and Newport Trust provided:

As investment manager, [Newport Trust] will at all times have the exclusive fiduciary authority and responsibility, in its sole discretion, to determine whether the continuing investment in the [Boeing] Stock Fund is prudent under ERISA (either with respect to permitting new investments in the [Boeing] Stock Fund, continuing to hold [Boeing] Stock, or both).

The agreement further provided:

In exercising its authority and responsibility [as investment manager], [Newport Trust has] the authority to exercise any and all of the following powers, and to instruct the trustee of the Plan accordingly:

(i)   to suspend or prohibit the investment of new participant or employer contributions in the [Boeing] Stock Fund;

(ii)  to suspend or prohibit the transfer of participant account balances into the [Boeing] Stock Fund;

(iii) in connection with the determination that holding [Boeing] Stock is no longer prudent under ERISA, to liquidate the [Boeing] Stock Fund and to sell or otherwise dispose of all of the [Boeing] Stock held in the [Boeing] Stock Fund ….

The 2017 Financial Statements for the Plan said that the Plan
had

> authorized Newport with sole responsibility for
> deciding whether to restrict investment in the
> Boeing Stock Fund, or to sell or otherwise dis-
> pose of all or any portion of the stock held in the
> Boeing Stock Fund. In the event Newport deter-
> mined to sell or dispose of stock in the Boeing
> Stock Fund, Newport would designate an alter-
> native investment fund under the Plan for the
> temporary investment of any proceeds from the
> sale or other disposition of the Company's com-
> mon stock.

Newport is not named as a defendant in this case.

C. *Plaintiffs' Allegations*

In October 2018, Boeing had for at least a year been selling
the new 737 MAX version of its best-selling 737 series of air-
liners. On October 29, 2018, a Lion Air 737 MAX airliner
crashed into the Java Sea, killing everyone aboard. Plaintiffs
here allege that soon after the crash, and especially once the
flight data recorder was retrieved, defendants knew or should
have known that all 737 MAX planes were unsafe to fly be-
cause of known problems with a new automated flight control
system that Boeing had added to the 737 MAX. On March 10,
2019, another 737 MAX crashed in Ethiopia, again killing eve-
ryone aboard. Plaintiffs here allege that the second crash also
resulted from the known problems with the automated flight
control system. The 737 MAX fleet was soon grounded world-
wide. On December 16, 2019—the close of the Class Period—

Boeing announced that it would suspend production of new 737 MAX jets beginning in January 2020.

The human, financial, and legal consequences of the 737 MAX crashes have been huge. This lawsuit presents a small and relatively narrow set of questions about whether Boeing employees are entitled to relief from some of the financial consequences of the 737 MAX disasters.

Plaintiffs allege here that defendants breached several duties imposed on plan fiduciaries by ERISA: (i) the duties of prudence and loyalty under ERISA § 404(a)(1); (ii) the duty to monitor investments under ERISA § 404(a)(1); and (iii) the co-fiduciary duty under ERISA § 405(a)(1)–(3). Plaintiffs' allegations rest on the theory that by November 7, 2018—one week after recovery of the flight data recorder from the first 737 MAX crash—defendants should have issued a corrective public disclosure saying that the 737 MAX was not safe to fly.

D. *Proceedings Before the District Court*

Plaintiffs filed this putative class action in March 2019, shortly after the second 737 MAX crash. The operative second amended complaint alleges that throughout the Class Period, from November 7, 2018 to December 16, 2019, Boeing's continuous concealment of material facts relating to the 737 MAX jets caused the price of Boeing stock to be artificially inflated. By November 7, 2018, plaintiffs allege, defendants knew or should have known that public disclosure of these safety issues was inevitable and should have taken steps to disclose them to the public immediately.

In Count One, plaintiffs allege that the individual defendants, the Plans Committee, and the Investment Committee, as fiduciaries of the Boeing Stock Fund, breached the duty of

prudence under ERISA § 404(a), 29 U.S.C. § 1104(a). Because these defendants failed to promptly disclose safety issues with the 737 MAX, plaintiffs and other Class members continued to acquire and hold Boeing stock at an artificially inflated price. With respect to Boeing, plaintiffs allege that the corporation knew about and encouraged individual defendants' continued concealment of material facts relating to the 737 MAX jets—and that the concealment itself was a corporate strategy. Under the same theory of failure to disclose corrective information, plaintiffs also allege that defendants breached their duty of loyalty under ERISA § 404(a), 29 U.S.C. § 1104(a).

In Count Two, plaintiffs allege that defendants breached the duty to monitor investments under ERISA § 404(a), 29 U.S.C. § 1104(a). In Count Three, plaintiffs allege that defendants are liable as co-fiduciaries for the breaches of other Boeing Stock Fund fiduciaries under ERISA § 405(a), 29 U.S.C. § 1105(a).

The district court granted defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), holding that plaintiffs' allegations were lacking in two key respects. First, the court held that none of the defendants were acting as fiduciaries of the Boeing Stock Fund. *Burke v. Boeing Co.*, 500 F. Supp. 3d 717, 725 (N.D. Ill. 2020). Second, the court held that plaintiffs otherwise failed to state a claim for breach of the duty of prudence by failing to meet the "demanding" standard for duty of prudence claims set forth in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). *Id.* at 725–27.

The district court also held that plaintiffs failed to state a claim for failure to monitor investments insofar as that claim was subject to the same pleading standard as the imprudence

claim, and that plaintiffs failed to state a claim for breach of co-fiduciary duties insofar as that claim was derivative of the imprudence and failure-to-monitor claims. The court did not separately address plaintiffs' disloyalty claim. *Id.* at 727–28. The court dismissed the second amended complaint without prejudice, granting plaintiffs leave to file a third amended complaint. *Id.* at 728. Plaintiffs did not take advantage of that opportunity. The district court entered final judgment dismissing the action with prejudice, and plaintiffs have appealed based on the second amended complaint.

## II. *Standard of Review*

We review de novo the district court's dismissal for failure to state a claim, and we may affirm the district court's decision on any ground for dismissal contained in the record, at least as long as the losing parties had a fair opportunity to be heard on it. E.g., *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 910 (7th Cir. 2013); see also *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017); *Dibble v. Quinn*, 793 F.3d 803, 807 (7th Cir. 2015). We construe the complaint in the light most favorable to plaintiffs, accepting all well-pleaded facts as true and drawing reasonable inferences in plaintiffs' favor. *Bator v. District Council 4*, 972 F.3d 924, 928 (7th Cir. 2020).

## III. *Analysis*

### A. *Defendants' Fiduciary Obligations Under the Plan*

ERISA imposes on plan fiduciaries duties of prudence and loyalty. Plan fiduciaries have a duty to manage plan assets under a "prudent man standard of care," that is, "solely in the interest of the participants and beneficiaries," and "with the care, skill, prudence, and diligence … that a prudent man acting in a like capacity and familiar with such matters would

use" under the circumstances. 29 U.S.C. § 1104(a)(1)(B). One fiduciary may also be held liable for another's breach if the first one knowingly participated in or enabled the other's breach, or knew about it and failed to make reasonable efforts to remedy that breach. § 1105(a). In this case, plaintiffs allege that defendants breached four fiduciary duties: (i) the duty of prudence; (ii) the duty of loyalty; (iii) the duty to monitor investments; and (iv) the co-fiduciary duty to monitor other fiduciaries.

The core of the case is plaintiffs' imprudence and disloyalty claims, which revolve around a theory of failure to disclose corrective information. We focus on the duties of prudence and loyalty and the tensions that employee stock ownership plans create at the intersection of ERISA, corporation law, and securities law. See generally *Dudenhoeffer*, 573 U.S. at 427–30 (explaining reasons for demanding pleading standard in ESOP stock-drop cases); *Halperin v. Richards*, 7 F.4th 534, 542 (7th Cir. 2021) (addressing tension between fiduciary duties under ERISA and state corporation law).

### 1.  *The Duty of Prudence*

In *Dudenhoeffer*, the Supreme Court adopted a demanding pleading standard for duty of prudence claims involving fiduciaries for benefit plans invested in employer stock. 573 U.S. 409. A plaintiff must "plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." *Id.* at 428. The Court explained that this standard reflected the competing congressional purposes of ERISA: to encourage the creation of employee stock ownership plans while ensuring that plan

participants could fairly and promptly enforce their rights under a plan. *Id.* at 424–25.

To guide lower courts in applying the "more harm than good" standard, the Court emphasized three principles. 573 U.S. at 428. First, the duty of prudence does not demand that a fiduciary break the law: the duty of prudence "cannot require an ESOP fiduciary to perform an action—such as divesting the fund's holdings of the employer's stock on the basis of inside information—that would violate the securities laws." *Id.* Second, where a complaint faults fiduciaries for failure to act on the basis of inside information or to disclose inside information to the public, courts should consider whether ERISA-based obligations implicating insider information "could conflict with the complex insider trading and corporate disclosure requirements imposed by the federal securities laws." *Id.* at 429. Third, courts should consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that halting investment in the employer's stock or publicly disclosing damaging insider information would spook the market, causing the stock price to drop. *Id.* at 429–30.

### 2. *The Duty of Loyalty*

ERISA's more general duty of loyalty requires that plan fiduciaries perform their duties with respect to a plan solely in the interest of plan participants and beneficiaries. 29 U.S.C. § 1104(a)(1). ESOP stock-drop plaintiffs can and frequently do plead disloyalty claims alongside their imprudence claims—as plaintiffs do here. We agree with the Eighth Circuit that plaintiffs "cannot use the duty of loyalty 'to circumvent the demanding *Dudenhoeffer* standard' for duty of prudence claims." *Dormani v. Target Corp.*, 970 F.3d 910, 917 (8th Cir.

2020), quoting *Allen v. Wells Fargo & Co.*, 967 F.3d 767, 777 (8th Cir. 2020).

B.  *Effects of the Delegations on Defendants' Duties to the Plan*

Before we wade more deeply into the duties owed by plan fiduciaries to plan participants, we must address a threshold question: whether any defendant was acting in a fiduciary capacity at the time he, she, or it took the actions that are the subject of the complaint. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905, 913 (7th Cir. 2013).

ERISA provides in relevant part that a person or entity is an ERISA fiduciary only

> to the extent that he: (i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In other words, fiduciary status under § 1002(21)(A) is not "all-or-nothing." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992). A fiduciary who wears two hats—as a corporate fiduciary and an ERISA fiduciary—"wear[s] only one at a time," wearing "the fiduciary hat when making fiduciary decisions." *Pegram*, 530 U.S. at 225. ERISA    "does    not    describe    fiduciaries    simply    as

administrators of the plan, or managers or advisers. Instead, it defines an administrator, for example, as a fiduciary "only 'to the extent' that he acts in such a capacity in relation to a plan." *Id.* at 225–26, quoting 29 U.S.C. § 1002(21)(A).

Fiduciary status thus depends not on formal titles but on "*functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). To that effect, two types of fiduciaries exist under ERISA: "named" fiduciaries and "functional" fiduciaries. See *id.* at 251. Named fiduciaries refers to persons who are "named in the plan instrument, or who, pursuant to a procedure specified in the plan" are given express "authority to control and manage the operation … of the plan." 29 U.S.C. § 1102(a)(1)–(2). Functional fiduciaries might not be named in the plan document but still exercise "discretionary control or authority over the plan's management, administration, or assets." *Mertens*, 508 U.S. at 251, citing § 1002(21)(A). As part of their express authority and control to manage the plan, named fiduciaries may also designate an individual, committee, or professional plan administrator to carry out fiduciary responsibilities. § 1105(c)(1).

Here, plaintiffs allege that defendants are or were either named or functional fiduciaries under ERISA and therefore owed "strict fiduciary duties of loyalty and prudence to the Plan and the participants in and beneficiaries of the Plan." We divide our discussion into four principal parts: (1) the role of defendant Plans Committee; (2) the role of defendant Boeing; (3) defendant Investment Committee's delegation to Newport of fiduciary authority over the Boeing Stock Fund; and (4) plaintiffs' theory that the Investment Committee retained

a non-delegable duty under ERISA to make immediate public disclosures of inside information.

1. *The Plans Committee*

Plaintiffs contend that defendant Plans Committee was identified as the Plan Administrator in the Summary Plan Description, and that the "Plan Administrator" was identified in the Plan document as the Plan's named fiduciary under ERISA § 402(a), 29 U.S.C. § 1102(a). Plaintiffs argue it is "beyond dispute" that the Plans Committee was a named fiduciary with "presumptive general authority with respect to the Plan." The premise is correct but the conclusion is not.

As the district court correctly found, the Plans Committee had no fiduciary responsibility over the investment choices of the Boeing Stock Fund. As the Plan Administrator under ERISA § 3(16), 29 U.S.C.A. § 1002(16), the Plans Committee's responsibilities over the Boeing Stock Fund are limited to "all matters related to administration of the Plan." Its *administrative* responsibilities included the full discretionary authority to: (i) interpret the Plan; (ii) determine questions of participation eligibility and benefits entitlement related to the Plan; (iii) establish rules and procedures for Plan administration; (iv) maintain accounts; and (v) generate annual reports. The Plans Committee was also tasked with "provid[ing] information to Members regarding the Investment Funds available under the Plan, including a description of the investment objectives and types of investments of each such Investment Fund."

As the Plan document states, the Plans Committee's role as Plan Administrator did not vest it with any responsibility, authority, or discretion to make investment decisions with

respect to the Boeing Stock Fund. Plaintiffs' reliance on the Plans Committee's "presumptive general authority with respect to the Plan," does not establish a basis for these plaintiffs' claims arising from the 737 MAX stock drop because fiduciary status under ERISA is defined in "*functional* terms of control and authority over the plan." See *Mertens*, 508 U.S. at 262. In the case of a plan administrator such as the Plans Committee, ERISA defines it as a fiduciary "only 'to the extent'" that it acts in such a capacity in relation to the plan. See *Pegram*, 530 U.S. at 225–26, quoting 29 U.S.C. § 1002(21)(A). Here, plaintiffs have failed to allege facts indicating that the Plans Committee or any of its individual members were acting in a fiduciary capacity related to managing the investments and investment options of the Boeing Stock Fund.

### 2. *The Claims Against The Boeing Company*

Plaintiffs argue that the district court erred in concluding that the remaining defendants—Boeing itself and the Investment Committee—were not fiduciaries in any relevant capacity because the Investment Committee had previously delegated to Newport its fiduciary duties over the investment choices of the Boeing Stock Fund. We first address the claims against Boeing and then those against the Investment Committee and its members.

There were two steps to the key delegation of responsibility here to Newport, the third party that plaintiffs have not sued, for the Plan's investments and the choices available to plan participants. The first step occurred when The Boeing Company, as plan sponsor, delegated to the Investment Committee its authority to invest, reinvest, and manage assets of all Boeing employee benefit plans, and to select and monitor investment options for the Plan. Under the Independent

Fiduciary Agreement that effected that delegation, Boeing re-
tained "responsibility in its corporate capacity to comply with
the requirements of applicable securities laws and ERISA
with respect to the offering of Company Stock under the
Plan." Those requirements, as defendants correctly note, in-
clude filing an annual report required for employee stock pur-
chase, savings, and similar plans (SEC Form 11-K) and a reg-
istration statement allowing Boeing to issue shares of its stock
to employees through the Plan (SEC Form S-8).

We see no legal problem with that first delegation of in-
vestment responsibilities from Boeing as plan sponsor to the
Investment Committee, giving the committee the authority to
manage assets of all Boeing employee benefit plans, and to se-
lect and monitor investment options for the Plan. That first
delegation was subject, of course, to duties of prudence and
loyalty on the part of Boeing. A plan sponsor could not dele-
gate its duties to people or entities if it had reason to doubt
their ability to carry out their duties competently or honestly.
But there is no plausible claim here that the first delegation
violated either of those duties.

Contrary to plaintiffs' theories here, the mere exercise of
*some* authority over Boeing employee benefit plans—here
Boeing's retention of administrative corporate compliance
duties with respect to Boeing stock—did not mean that
Boeing was exercising fiduciary authority over the investment
choices and holdings of the Boeing Stock Fund. Those powers
and duties were clearly delegated to the Investment
Committee. Boeing, like the Plans Committee, lacked

fiduciary authority with respect to the investments of the Boeing Stock Fund during the Class Period.[1]

### 3. *The Investment Committee's Delegation*

The central issues in this case concern the second delegation at issue here: the Investment Committee's decision to delegate to an outside third party responsibility for choosing and managing the investments of the Boeing Stock Fund. In determining that the Investment Committee lacked fiduciary authority with respect to the investments of the Boeing Stock Fund, the district court relied on language in the Independent Fiduciary Agreement delegating to Newport "exclusive fiduciary authority and responsibility, in its sole discretion, to determine whether the continuing investment in the [Boeing Stock Fund] is prudent under ERISA." *Burke*, 500 F. Supp. 3d at 725. The district court further noted that Newport, as the fiduciary responsible for the investments of the Boeing Stock Fund, was required to "communicate with participants concerning their investment in the Boeing Stock Fund at such times as Newport reasonably determined to be necessary under ERISA or desirable in the discharge of Newport's duties and responsibilities under the Independent Fiduciary Agreement." *Id.* (cleaned up).

Plaintiffs argue that the Independent Fiduciary Agreement was much more limited than the district court thought.

---

[1] To the extent that plaintiffs' claims against defendant Verbeck, who was responsible for signing Boeing's SEC filings during the Class Period, allege fiduciary responsibility over the Boeing Stock Fund by virtue of similar "corporate duties," plaintiffs' allegations fall short at the threshold question of whether Verbeck retained fiduciary authority over the Boeing Stock Fund.

Plaintiffs claim that any duty not expressly delegated to Newport in the Independent Fiduciary Agreement remained with the Investment Committee, including, most importantly in plaintiffs' view, "the duty to make public disclosures of non-public information." Plaintiffs' theory of liability is that Boeing insiders, such as members of the Investment Committee, had access to material non-public information concerning safety issues with the 737 MAX. These insiders failed to disclose that information to Newport (and all other shareholders and potential investors), rendering Newport incapable of performing its obligations under the Independent Fiduciary Agreement. Plaintiffs argue that this duty to disclose is part of the broader duty of loyalty that cannot be delegated. We are not persuaded that ERISA imposes such a duty that would be layered on top of federal securities laws governing public disclosures of information material to investors.

The Independent Fiduciary Agreement clearly delegated to Newport the decisions that are usually the focus of ESOP stock-drop cases: the decisions to allow the Plan and employees to continue to hold employer stock, and the decision to allow employees to continue making new investments in employer stock. In making those decisions, Newport was not a Boeing insider. It was making decisions like any outside investor, albeit one holding a massive, $11 billion stake in the company, on the basis of public information about the company and its prospects. As noted, a person is an ERISA fiduciary "only 'to the extent'" that she acts in such a capacity in relation to the plan. *Pegram*, 530 U.S. at 225–26, quoting 29 U.S.C. § 1002(21)(A). During the Class Period, the Investment Committee did not exercise "discretionary control or authority" over the Boeing Stock Fund's "management, administration, or assets." See *Mertens*, 508 U.S. at 251, citing

§ 1002(21)(A). Instead, Newport exercised that discretionary authority, and plaintiffs have not sued Newport.

The delegation to Newport anticipated exactly this sort of case, in which Boeing insiders would be accused of facing conflicting fiduciary loyalties. The delegation was designed to remove the dilemma that plaintiffs' theory would force upon corporate insiders who exercise fiduciary responsibilities over ERISA plans invested in the employer's stock. We see no legal barrier to such a delegation, and decades of ESOP stock-drop litigation have provided powerful reasons for employers and fiduciaries for ESOPs to take this step.[2]

Newport retained "exclusive fiduciary authority and responsibility, in its sole discretion" (i) to restrict new investments into the Boeing Stock Fund; (ii) to prohibit transfers into and out of the Boeing Stock Fund; and (iii) *in connection with the determination that holding Boeing Stock is no longer prudent under ERISA*, to liquidate the Boeing Stock Fund and to designate an alternative temporary investment for the proceeds. Accordingly, the Investment Committee and its individual members, including defendants Dohnalek and Verbeck and the John Doe defendants, cannot be liable for breaching fiduciary duties that they simply did not have.

---

[2] We should acknowledge how extraordinary this delegation was. Boeing insiders delegated to an outsider virtually complete authority to decide when the Boeing Stock Fund should abandon current and future investments in Boeing stock on behalf of Boeing employees. Yet given the decades of ESOP stock-drop litigation, the delegation to avoid an impossible dilemma under ERISA was certainly understandable.

### 4.  *A Duty of Immediate Public Disclosure?*

Plaintiffs, perhaps anticipating this result, lean more heavily on their theory that the defendants' duty of loyalty included a non-delegable duty under ERISA (as opposed to federal securities law) to disclose non-public information to Plan participants, which after *Dudenhoeffer* would require full public disclosure—to all shareholders and potential investors. Defendants point out that plaintiffs' own allegations recognize that the proposed disclosure would have caused "massive disruptions in the demand for the 737 MAX," which plaintiffs themselves characterized as Boeing's "flagship" aircraft. And since the Plan held nearly $11 billion in Boeing stock in November 2018, even a modest ten percent decline would have caused a billion-dollar loss. Defendants argue that a prudent fiduciary could have readily concluded that immediate public disclosure of negative information would do more harm than good to the Boeing Stock Fund, especially in light of the multiple investigations—internal and external, foreign and domestic—that were just beginning in November 2018. See *Allen v. Wells Fargo & Co.*, 967 F.3d 767, 773–76 (8th Cir. 2020) (affirming dismissal of claims based on theory that ERISA imposed duty to disclose adverse information about employer's business).

Plaintiffs have failed to identify any stand-alone fiduciary duty under ERISA to disclose non-public information about the employer's business to Plan participants or the general public. As we have said before, a "violation of ERISA's disclosure requirement, which arises under the general fiduciary duties imposed by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires evidence of either an intentionally misleading statement, or a material omission where the fiduciary's silence can

be construed as misleading." *Howell v. Motorola, Inc.*, 633 F.3d 552, 571 (7th Cir. 2011). We see no support in this language for plaintiffs' position—and we have found none elsewhere— that these general fiduciary duties are non-delegable. Because the Investment Committee was not serving as an ERISA fiduciary with respect to the Boeing Stock Fund's investment choices during the Class Period, it cannot be liable for breach of general fiduciary duties.

Further, even if the Investment Committee and its members were deemed to have been serving as ERISA fiduciaries during the Class Period, plaintiffs' argument would encounter a second roadblock. In *Howell*, we explicitly rejected the plaintiffs' view that plan fiduciaries were required to provide all information about the defendant corporation's business decisions in real time to plan participants. 633 F.3d at 572. We also explicitly rejected those plaintiffs' view that a plan fiduciary's failure to provide information about a bad business decision was sufficient to make the omission of information a violation of ERISA. *Id.*

Most critically for our purposes here, we emphasized that adopting such a rule would create at least one problem: insider trading in violation of federal securities laws. 633 F.3d at 572. Federal securities law has long governed corporate insiders' duties of disclosure of material information to investors and their duties when they trade corporate stock themselves. Securities laws try to balance several competing policies and duties, and we see no sound basis for saying that ERISA adds additional layers of duties to disclose inside information, at least to the extent plaintiffs contend any duty to disclose that might survive the *Dudenhoeffer* pleading standard also cannot be satisfied by delegating investment choices

to an independent outsider. And federal securities laws simply do not require immediate disclosure of all bad news.

At its core, that's what plaintiffs would demand of defendants. Defendants possessed material insider information, plaintiffs allege, so the ERISA duties of prudence and loyalty required that they disclose this information to plan participants and the public. According to plaintiffs, no later than November 7, 2018—a week after recovery of the flight data recorder from the Lion Air crash—defendants knew or should have known that the truth about safety issues with the 737 MAX's flight control software would eventually become public. Plaintiffs contend that a prudent fiduciary in defendants' position would therefore have immediately come forward with this inside information to correct artificial inflation of Boeing's stock price and to minimize long-term reputational harm to the company caused by delayed disclosure of material safety defects of the 737 MAX. Under *Dudenhoeffer*, plaintiffs must allege and later prove that a prudent fiduciary facing that situation could not have concluded that prompt corrective disclosure to the public would have done more harm than good to the Boeing Stock Fund. Put another way, plaintiffs contend that defendants, to comply with ERISA, should have published inside information immediately—regardless of any obligations imposed by the federal securities laws.

Indeed, plaintiffs go so far as to contend that corrective disclosure not only would not conflict with the federal securities laws, but that those laws actually required such immediate disclosure. While we do not express an opinion on the merits of this argument, we recognize that these plaintiffs are not alone in taking the position that the duties of prudence and loyalty *require* an ESOP fiduciary to publicly disclose

inside information or to take some action—e.g., divest the fund's holdings or freeze new investment in the fund—on the basis of inside information. After *Dudenhoeffer*, similar theories have been argued in a number of ESOP stock-drop cases.[3]

ESOP fiduciaries, who as *Dudenhoeffer* recognized are often company insiders, can find themselves in a double bind. See 573 U.S. at 423; see also *Coburn v. Evercore Trust Co., N.A.*, 844 F.3d 965, 974 (D.C. Cir. 2016) (Rogers, J., concurring in

---

[3] See, e.g., *In re Allergan ERISA Litig.*, 975 F.3d 348, 351–53 (3d Cir. 2020) (plan participants alleged plan fiduciaries breached duty of prudence by failing to publicly disclose inside information concerning alleged price-fixing conspiracy); *Dormani*, 970 F.3d at 914–15 (plan participants alleged plan fiduciaries breached duty of prudence by failing to publicly disclose or act on inside information concerning Target Canada's supply-chain management); *Allen*, 967 F.3d at 773–75 (plan participants alleged plan fiduciaries breached duty of prudence by failing to publicly disclose or act on inside information concerning unethical sales practices); *Jander v. Retirement Plans Committee of IBM*, 910 F.3d 620, 622–23 (2d Cir. 2018), *judgment reinstated*, 962 F.3d 85 (2d Cir. 2020) (plan participants alleged plan fiduciaries breached duty of prudence by failing to publicly disclose or act on insider information concerning troubled microelectronics business); *Saumer v. Cliffs Natural Res. Inc.*, 853 F.3d 855, 858 (6th Cir. 2017) (plan participants alleged plan fiduciaries breached duty of prudence by failing to publicly disclose or act on inside information concerning purchase of an iron-ore mine); *Whitley v. BP, P.L.C.*, 838 F.3d 523, 529 (5th Cir. 2016) (plan participants alleged plan fiduciaries breached duty of prudence by failing to publicly disclose or act on inside information concerning "numerous undisclosed safety breaches" prior to Deepwater Horizon explosion); *Varga v. General Elec. Co.*, 834 F. App'x 686, 686–87 (2d Cir. 2021) (plan participant alleged plan fiduciaries breached duty of prudence by failing to publicly disclose or act on inside information concerning liabilities of its two insurance subsidiaries); *Laffen v. Hewlett-Packard Co.*, 721 F. App'x 642, 644 (9th Cir. 2018) (plan participant alleged plan fiduciaries breached duty of prudence by failing to publicly disclose or act on inside information concerning prior knowledge of whistleblower's allegations).

judgment) ("The Supreme Court has confirmed that the role
of ESOP fiduciaries gives rise to the 'tension' between the
'general duty of prudence' required of ERISA fiduciaries and
the authorization of non-diversified, high-risk ESOPs.") (in-
ternal citation omitted).

This double bind is precisely why the Investment Com-
mittee had a strong incentive to delegate the fiduciary power
over investment decisions for the Boeing Stock Fund to an in-
dependent third-party fiduciary. By appointing Newport to
manage the Boeing Stock Fund, the Investment Committee—
and all other defendants, for that matter—extracted them-
selves from the bind. Of course, the Investment Committee
did not extract itself from the bind altogether. Nor could it.
Appointing fiduciaries, like the Investment Committee, have
an ongoing fiduciary duty to monitor the activities of their ap-
pointees. See 29 U.S.C. §§ 1104(a)(1), 1105(a), & 1105(c); *How-
ell*, 633 F.3d at 573; *Leigh v. Engle*, 727 F.2d 113, 134–35 (7th Cir.
1984). "The duty exists so that a plan administrator or sponsor
cannot escape liability by passing the buck to another person
and then turning a blind eye." *Howell*, 633 F.3d at 573. But
there is no allegation that the Investment Committee or other
defendants did that here. Plaintiffs do not allege that defend-
ants breached the duty to monitor their appointees or that
there were any issues concerning Newport's honesty or com-
petence.

Plaintiffs argue instead that defendants, as company insid-
ers, failed to disclose to Newport inside information about
safety issues with the 737 MAX, rendering Newport incapable
of performing its fiduciary obligations under the Independent
Fiduciary Agreement. In *Howell*, as noted above, we rejected
plaintiffs' argument that the duty to monitor appointees

should require appointing fiduciaries to review all business decisions of appointed plan administrators. 633 F.3d at 573. We emphasized that imposing such a standard would defeat the purpose of having a trustee appointed to run a benefits plan in the first place. *Id*.

The same logic applies here. The point of having an independent fiduciary is of course to give the fiduciary independence from the appointing fiduciaries. If the independent fiduciary relies on insider information to make investment decisions concerning the employer's stock, then the independent fiduciary would become mired in the very conflict of interest that she was appointed to avoid. The Second Circuit has thus explained that the duty to monitor appointees does not include a "duty to keep the plan managers apprised of material, non-public information regarding the soundness of [appointing fiduciaries' company] as an investment." *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (declining to alter this view in light of *Dudenhoeffer*) (citation omitted). After the Supreme Court noted in Dudenhoeffer that the SEC's views "may well be relevant" on an ERISA-based duty to disclose, the United States and the SEC responded: "In the view of the SEC and the United States, it would generally be inconsistent with the objectives of the securities laws to impose an ERISA-based duty to publicly disclose inside information in the absence of a securities-laws duty. And the Department of Labor concurs in the conclusion that ERISA does not impose a duty to disclose in those circumstances." Brief for the United States, including the Securities and Exchange Commission, as Amicus Curiae Supporting Neither Party at 18, *Retirement Plans Committee of IBM v. Jander*, 140 S. Ct. 592 (2020) (No. 18-1165).

If the Investment Committee—composed of Boeing insiders—had not appointed an independent fiduciary to select and manage the Plan's investments under these circumstances, we could easily imagine a different case in which plaintiffs alleged that defendants breached the duty of prudence by *failing* to appoint an independent fiduciary. Cf. *Pfeil v. State Street Bank & Trust Co.*, 806 F.3d 377, 380 (6th Cir. 2015) (observing that State Street served as an independent fiduciary of General Motors ESOP during period of "severe" difficulties, including bankruptcy, for General Motors); *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 8 (1st Cir. 2009) (during reorganization proceedings, corporate management "took the eminently correct decision of insulating itself" from potential conflict of interest with respect to fiduciary duties by "delegat[ing] the relevant decisional power to an independent third party" to execute its autonomous determination of whether retention or sale of company stock was appropriate); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 421 (4th Cir. 2007) ("[A]lthough appointment of an independent fiduciary does not 'whitewash' a prior fiduciary's actions, timely appointment of an independent fiduciary, prompted by concerns about the continued prudence of holding company stock under an ERISA plan, does provide some evidence of 'procedural' prudence and proper monitoring during the relevant period."); *Leigh*, 727 F.2d at 134–35 (emphasizing that duty of prudence obliges appointing fiduciaries to consider and attempt to minimize known conflicts of interest faced by their appointed fiduciaries); *Donovan*, 680 F.2d at 271 (observing that duties of prudence and loyalty require insider-fiduciaries "to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their

functioning with the complete loyalty to participants demanded of them" under ERISA).

Independent fiduciaries like Newport can serve a valuable and legitimate purpose in managing the tension between ERISA and federal securities laws. As plaintiffs' arguments and defendants' counterarguments in this case show, the "right" choice is fraught with the potential to make several "wrong" ones. For example, would it have done more harm than good for defendants to publish negative information about the 737 MAX just as several investigations were picking up speed in early November 2018? Plaintiffs themselves acknowledge that such a disclosure would have caused "massive disruptions in the demand for the 737 MAX," leading to a sharp drop in the value of Boeing stock. The far more important practical concerns about safety overshadow concerns about stock prices and finances, but whether Boeing failed to comply with other legal duties concerning safety will be resolved in other forums.

It is not surprising that the practice by corporate insiders of delegating fiduciary duties under ERISA to professional, independent third-party firms—like Newport—has grown in "prevalence and scope," according to a 2014 report from the U.S. Department of Labor's Advisory Council on Employee Welfare & Pension Benefit Plans. *Outsourcing Employee Benefit Plan Services* at 4 (2014), http://www.dol.gov/sites/default/files/ebsa/about-ebsa/about-us/erisa-advisory-council/2014ACreport3.pdf (last accessed Aug. 1, 2022). The Advisory Council explained that the increased use of third-party firms as ERISA fiduciaries coincided, in part, with the "increasing complexity of employee benefit plan investment and administration which requires specific expertise that in many cases

can only be provided by third parties." *Id.* According to the Advisory Council, plan sponsors most frequently cited the following as benefits of delegating fiduciary responsibilities: (i) cost and economies of scale; (ii) access to technology; (iii) access to legal and compliance expertise; and, most notably for our purposes, (iv) limiting plan sponsor fiduciary risk. *Id.* at 5–6.[4]

"Limiting plan sponsor risk" is a practical and prudent objective for ESOP sponsors and corporate insiders. The appointment of an independent fiduciary does not completely release appointing fiduciaries of *all* responsibility. But where

---

[4] Published guidance from lawyers who represent and advise employers concerning state and federal securities laws, as well as ERISA, reflects similar support for delegation of investment choices. 1 Lee T. Polk, Operational principles of fiduciary conduct—Management of plan assets, ERISA Practice & Litigation § 3:25 (2021) ("Although independent fiduciaries have been a longstanding aspect of ERISA fiduciary law and practice, the phenomenon of independent fiduciaries has increased with the recent wave of company securities litigation. For participants in ERISA plans whose accounts hold company stock, the independent fiduciary may mean an extra layer of protection."); Michael S. Hines and David C. Olstein, *Dudenhoeffer: An Effective Tool to 'Weed Out Meritless' Employer Stock Drop Claims?*, Practitioner Insights Commentaries (2015) (suggesting, post-*Dudenhoeffer*, that "plan sponsors should re-evaluate the practice of appointing investment committee members who are in possession of nonpublic information, and consider whether they should engage an independent fiduciary to manage employer stock funds"); see also Frank P. VanderPloeg, *Role-Playing Under ERISA: The Company as "Employer" and "Fiduciary*," 9 DePaul Bus. L.J. 259, 278 (1997) ("Traditionally, an employer … may make investment decisions under a conflict of interest and may derive an incidental benefit, but the employer must still have acted with an 'eye single' to the interests of participants and their beneficiaries…. The best solution is for the employer … to let the decision be made by an independent fiduciary.") (footnote omitted).

company insiders who manage ESOPs are willing to give up control to avoid potential conflicts between duties under ERISA and their duties under corporation and federal securities laws, we see no legal obstacles. Quite the opposite. We see important benefits associated with the practice of corporate insiders appointing independent fiduciaries to make the choices about investments, particularly in employer stock.

It may be that some other source of law imposed a duty on Boeing and other defendants to come forward sooner by publicly disclosing information about the problems with the 737 MAX automated flight control system. No doubt the tort claims by the families of those who died in the second 737 MAX crash in Ethiopia contend that there were duties to prospective passengers to disclose such information earlier. We are not persuaded, however, that the combination of ERISA and an employee stock ownership plan plausibly required such public disclosures. Under the reasoning of *Dudenhoeffer*, plaintiffs have not pled circumstances under which a prudent fiduciary could not have concluded that such disclosures would do more harm than good to Plan participants.

The remainder of plaintiffs' arguments against the Investment Committee's delegation to Newport of fiduciary authority over the Boeing Stock Fund may be dealt with briefly. Plaintiffs argue that the district court did not adequately consider their duty of loyalty claim. Plaintiffs' allegations about the duty of loyalty add nothing to their flawed duty of prudence theory. As noted, we agree with our colleagues on the Eighth Circuit that plaintiffs cannot use the broader and more general duty of loyalty "'to circumvent the demanding *Dudenhoeffer* standard' for duty of prudence claims." *Dormani*, 970 F.3d at 917, quoting *Allen*, 967 F.3d at 777.

Plaintiffs also asserted during oral argument that if the Investment Committee (or Plans Committee) had consisted of lower-level employees not privy to the kind of information that senior executives were privy to, committee members would have been absolved of the purported non-delegable duty to disclose inside information. Notwithstanding the fact that plaintiffs have not persuaded us there is a stand-alone, non-delegable fiduciary duty under ERISA to disclose non-public information to Plan participants and the general public, plaintiffs' position is simply unrealistic, especially as applied to managing an $11 billion stake in the company. In any event, appointing a third-party independent fiduciary achieves the same goal without imposing a potential conflict of interest on employees at any level.

The judgment of the district court is AFFIRMED.